WORLDWIDE CHURCH OF GOD, INC.;
Ambassador College, Inc.; Ambassador
International Cultural Foundation, Inc.;
Herbert W. Armstrong; Stanley R. Rad-
er; Ralph Helge, Appellants,

v.

The STATE OF CALIFORNIA, Evelle J.
Younger, George Deukmejian, Lawrence
R. Tapper, Appellees.

No. 79–3672.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 4, 1980.

Decided July 21, 1980.

Laurence H. Tribe, Cambridge, Mass., Allan Browne, Allan B. Cooper, Allan Gabriel, Ervin, Cohen & Jessup, Beverly Hills, Cal., for appellants.

James M. Cordi, Deputy Atty. Gen., Los Angeles, Cal., argued for appellees; Lauren R. Bramard, Los Angeles, Cal., on brief.

Before GOODWIN and ALARCON, Circuit Judges, and PRICE,* District Judge.

PER CURIAM.

The Worldwide Church of God appeals from the district court's orders denying the Church a preliminary injunction and denying it leave to amend its civil rights complaint. The district court properly denied injunctive relief on the record before it, but the refusal to allow amendment of the Church's complaint requires a remand.

On January 2, 1979, the Attorney General of the State of California, pursuant to his supervisory authority over charitable trusts under California Corporations Code § 9505,[1] filed an action in state court, seeking an accounting of the finances of the Church and affiliated corporations and requesting that those entities be placed in receivership. The state's complaint alleged that these actions were necessary to prevent diversion of Church assets from charitable purposes to the personal benefit of persons who controlled the Church. The state court, following an ex parte proceeding, appointed a temporary receiver. Several days later, af-

---

* The Honorable Edward Dean Price, United States District Judge for the Eastern District of California, sitting by designation.

1. California Corporations Code § 9505 provides:

"A nonprofit corporation which holds property subject to any public or charitable trust is subject at all times to examination by the Attorney General, on behalf of the State, to ascertain the condition of its affairs and to what extent, if at all, it may fail to comply with trusts which it has assumed or may depart from the general purposes for which it is formed. In case of any such failure or departure the Attorney General shall institute, in the name of the State, the proceedings necessary to correct the noncompliance or departure."

On January 1, 1980, § 9505 was replaced by Corporations Code § 9230 which reads as follows:

"(a) Upon reasonable grounds to believe that the following condition or conditions have occurred or do exist, the Attorney General may, at reasonable times, examine a corporation to determine whether:

(1) The corporation fails to qualify as a religious corporation under this part; or

(2) There is or has been any fraudulent activity in connection with the corporation's property; or

(3) Any corporate property is or has been improperly diverted for the personal benefit of any person; or

(4) Property solicited and received from the general public based on a representation that it would be used for a limited purpose other than general support of the corporation's religious activities, has been improperly used in a manner inconsistent with the stated purpose for which the property was solicited; or

(5) There has been a substantial diversion of corporate assets from stated corporate purposes.

"(b) Such examination shall respect privileges enumerated in Division 8 (commencing with Section 900) of the Evidence Code and shall protect the confidential nature of membership lists by using such lists only in connection with the examination and any subsequent court proceeding. In addition, such examination shall not unnecessarily interfere with normal operations and religious observances of the corporation.

"(c) The Attorney General may institute an action in the name of the state to enforce the right of examination set forth in subdivision (a).

"(d) For reasonable cause, the Attorney General may institute an action in the name of the state:

(1) To establish that the corporation fails to qualify as a religious corporation under this part, and if a court so finds it shall enter an order that the corporation shall no longer operate as a religious corporation under this part.

(2) To correct any wrongful activity which has taken place in connection with or as a result of any condition or conditions set forth in paragraph (2), (3), (4) or (5) of subdivision (a)."

ter an adversary hearing, the court imposed a permanent receivership. The Church has continually, though unsuccessfully, challenged discovery orders relating to the accounting action in state court.[2]

On January 16, 1979, the Worldwide Church filed an action under 42 U.S.C. § 1983 against California and individual state attorneys general in federal district court. The Church sought a preliminary injunction restraining the enforcement of the state receivership order during the pendency of the federal litigation, a permanent injunction against enforcement of the receivership, and damages for violations of its civil rights.

On February 22, the district court, relying on the abstention principles articulated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), denied preliminary injunctive relief and granted the state's motion to "dismiss the matter." The Church then filed a motion under Fed.R. Civ.P. 59(e), requesting the court to modify its memorandum and order to permit the Church to amend its complaint. The district court denied that motion in a memorandum and order dated October 12, 1979, stating that any amendment would be "futile." This appeal followed.[3]

The Church initially contends that the district court's finding that *Younger* abstention precluded preliminary injunctive relief was error and that injunctive relief should have been granted under the standards defined in *Miss Universe, Inc. v. Flesher*, 605 F.2d 1130, 1134 (9th Cir. 1979).

Reliance on *Younger*, it is alleged, was inappropriate for either of two reasons. First, *Younger* did not apply because the enforcement of the receivership order which the Church sought to restrain is not a "pending state proceeding" nor does it implicate "important state interests." *See Moore v. Sims*, 442 U.S. 415, 423, 99 S.Ct. 2371, 2377, 60 L.Ed.2d 994 (1979); *Trainor v. Hernandez*, 431 U.S. 434, 444, 97 S.Ct. 1911, 1918, 52 L.Ed.2d 486 (1977). Second, even if *Younger* could apply in this context, the state action either was based on a patently unconstitutional statute or was brought in bad faith, thereby bringing the case within recognized exceptions to the abstention doctrine. *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611, 95 S.Ct. 1200, 1211, 43 L.Ed.2d 482 (1975). The Church also argues that if abstention was proper, the district court erred in denying the Church the opportunity to amend its complaint to plead matters triggering either or both of the exceptions to *Younger*.

On the record then before it, the district court correctly invoked *Younger* abstention. Imposition of the receivership was an integral element of the ongoing state litigation. Enjoining enforcement of the receivership order would violate the principles of federalism, equity, and comity that *Younger* and related cases seek to preserve. *See Huffman v. Pursue, Ltd.*, 420 U.S. at 601–604, 95 S.Ct. at 1206–1208; *Younger v. Harris*, 401 U.S. at 44, 91 S.Ct. at 750. The Church must exhaust its state appellate remedies in challenging the re-

---

**2.** On three occasions, the United States Supreme Court has declined to review state court decisions sustaining the receivership or discovery orders relating to the state litigation. *Worldwide Church of God, Inc. v. Superior Court of California*, —— U.S. ——, 100 S.Ct. 2974, 64 L.Ed.2d ——— (1980); *Rader v. Superior Court of California*, 444 U.S. 916, 100 S.Ct. 230, 62 L.Ed.2d 170 (1979); *Worldwide Church of God, Inc. v. Superior Court of California*, 444 U.S. 883, 100 S.Ct. 172, 62 L.Ed.2d 112 (1979).

**3.** In March 1979, while the Church's Rule 59(e) motion was still before the district court, the state trial court stayed imposition of the receivership after various church members and em-

ployees posted a $1,000,000 appeal bond. The stay was still in effect at the time this appeal was argued.

The state argues that the staying of the receivership renders most aspects of this appeal moot. We disagree. The alleged constitutional wrongs which the Church seeks to enjoin are "capable of repetition, yet evading review." *Dunn v. Blumstein*, 405 U.S. 330, 333 n. 2, 92 S.Ct. 995, 998, 31 L.Ed.2d 274 (1972). The receivership may be reimposed at any time. Furthermore, the receivership is stayed only because church members and employees have assumed an extraordinary financial burden. Should the Church prevail in its action, those parties would be relieved of that obligation.

ceivership before seeking relief in a federal court. *Huffman, supra*, 420 U.S. at 608–609, 95 S.Ct. at 1210–1211.

Investigation and regulation of fraud in charitable trusts, the state interest arguably implicated here, is an interest of the magnitude of controlling welfare fraud, *Trainor v. Hernandez, supra*, or regulating child custody, *Moore v. Sims, supra*.[4] The Church contends that supervision of a religious institution's internal finances is unconstitutional and, consequently, cannot be an "important state interest." This type of argument, however, could be made in any federal litigation in which a plaintiff seeks to enjoin allegedly unconstitutional state proceedings, and, if accepted, would render *Younger* a nullity.

■ We are also unpersuaded that either of the exceptions to *Younger* abstention applies in this case. Even if the application of California Corporations Code § 9505[5] to the Worldwide Church were unconstitutional, and we express no opinion on that question, the statute is not "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Younger v. Harris*, 401 U.S. at 53–54, 91 S.Ct. at 755 (quoting *Watson v. Buck*, 313 U.S. 387, 402, 61 S.Ct. 962, 967, 85 L.Ed. 1416 (1941)). It is unquestioned that the state attorney general may constitutionally investigate and supervise the affairs of some charitable corporations.

■ Nor do the Church's pleadings, in their present form, allege harassment or bad faith with sufficient specificity to trigger the second *Younger* exception. However, if the Church is permitted to amend its complaint, it might be able to allege facts demonstrating that the state action was brought in bad faith. Under Fed.R. Civ.P. 15(a), a party may, as a matter of

right, amend its complaint once before the filing of a "responsive pleading" or the entry of final judgment following dismissal of its action. *See* Wright and Miller, *Federal Practice and Procedure: Civil* § 1483 (1971). *Accord Breier v. Northern California Bowling Proprietors' Ass'n*, 316 F.2d 787, 789 n. 1 (9th Cir. 1963) (dictum). The state's motion to dismiss was not a "responsive pleading" within the meaning of Rule 15(a), and the district court did not enter a final judgment dismissing the action. Accordingly, the Church retains its right of amendment under Rule 15. The district court erred in refusing to permit amendment of the complaint.

We affirm the denial of the Church's motion for a preliminary injunction and remand to allow amendment of the complaint.

---

4. *See Exchange Nat'l Bank of Chicago v. Abramson*, 295 F.Supp. 87, 92 (D.Minn.1969). *But cf. Securities & Exchange Comm'n v. Wencke*, 577 F.2d 619, 623 (9th Cir.), *cert. denied*, 439 U.S. 964, 99 S.Ct. 451, 58 L.Ed.2d 422 (1978) (federal appointment of receiver proper when, on admitted facts, state receivership was a device to cloak continued fraud).

