**IT IS HEREBY ORDERED** that plaintiff's motion for reconsideration [# 51] is denied.

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to add an exhibit [# 52] is denied.[2]

### U.S. FINANCIAL CORP., Plaintiff,

### v.

### Lawrence J. WARFIELD, as Special Deputy Receiver for AzStar Casualty Company and Peacock, Hislop, Staley & Given, Inc., Defendants.

### No. CIV 93–809 PHX RCB.

United States District Court,
D. Arizona.

Aug. 16, 1993.

---

1. The *Grotke, Minker,* and *Ritter* courts all addressed the question of whether the defendant was an "employer" under the Act as a Rule 12(b)(1) or 12(b)(2), Fed.R.Civ.P., question.

2. Plaintiff's new exhibit duplicates Defendants' Exhibit A filed with the motion for summary judgment, except that it is missing a crucial page. Plaintiff's new exhibit thus adds nothing to the record.

Jeffrey H. Greenberg, Greenberg & Associates, Tucson, AZ, for plaintiff.

Victoria M. Gruver, Guttilla & Murphy, Phoenix, AZ, for defendants.

Robert E. Miles, Streich Lang, Phoenix, AZ.

## ORDER

BROOMFIELD, District Judge.

Defendant Lawrence J. Warfield, in his capacity as Special Deputy Receiver of AzStar Casualty Company, has filed a motion to dismiss claiming that this court lacks subject matter jurisdiction or, in the alternative, that the court should abstain from exercising jurisdiction over plaintiff U.S. Financial Corporation's claims against AzStar. U.S. Financial Corporation has responded to the mo-

tion. The court heard oral argument on the matter on August 9, 1993, and now rules.

## I. *INTRODUCTION*

The Arizona legislature has enacted a comprehensive scheme for regulating financially troubled insurance companies. As part of its regulatory system, Arizona has adopted the Uniform Insurers Liquidation Act. Under the terms of the Act, the Arizona Superior Court is granted exclusive jurisdiction over insurance company rehabilitation and liquidation proceedings and the Arizona Director of Insurance is appointed as the receiver for insolvent insurers involved in such proceedings. The Act explicitly gives the Superior Court the power to issue injunctions to prevent all persons and entities from bringing actions against the assets of the insurer in any forum other than the receivership court.

AzStar Casualty Company is an insurer involved in liquidation proceedings under the Act in Arizona Superior Court. The Superior Court judge overseeing AzStar's liquidation has issued an injunction proscribing all persons from bringing claims against AzStar in any forum other than in the receivership court. Plaintiff United States Financial Corporation ("USF") has asserted claims in this court against AzStar, through AzStar's Special Deputy Receiver Lawrence J. Warfield, and against a broker used in the past by AzStar. The basis for jurisdiction over USF's claims against AzStar is 28 U.S.C. § 1367, the supplemental jurisdiction statute.

Warfield contends that USF's claims against AzStar must or, at least, should be dismissed. Warfield contends that the court lacks subject matter jurisdiction over USF's claims against AzStar because of the state court's injunction and the force of the McCarran–Ferguson Act. Warfield also argues that this court lacks jurisdiction because the state court has taken control of the assets that USF seeks to be awarded through this suit. In addition, AzStar requests the court to dismiss the claims against AzStar pursuant to 28 U.S.C. § 1367(c), which permits a federal court in certain circumstances to decline to exercise supplemental jurisdiction, and pursuant to three different abstention doctrines, known generally as *Burford*

abstention, *Younger* abstention, and *Colorado River* abstention. USF responds that this court has jurisdiction, and that this court should not decline to exercise jurisdiction.

## II. *BACKGROUND*

Plaintiff U.S. Financial Corporation ("USF") has brought this case against defendants Peacock, Hislop, Staley & Given, Inc. and Lawrence J. Warfield, Special Deputy Receiver for AzStar Casualty Company. Plaintiff's claims arise out of a transaction between USF and AzStar[1] which was brokered by defendant Peacock, Hislop, Staley & Given, Inc. A general description of the facts that give rise to plaintiff's claims as alleged in its complaint is as follows.

In December of 1990, Peacock, Hislop, Staley & Given, Inc., as broker for AzStar, contacted USF in an attempt to induce USF to purchase $500,000 of preferred stock in AzStar. USF allegedly stated that it was willing to purchase the securities on two conditions: (1) that AzStar would, in the next year, loan USF $1,000,000; and (2) that USF could repay the principal amount of the loan by paying AzStar $500,000 and by tendering back the $500,000 in securities which USF was agreeing to purchase. These conditions allegedly were transmitted to AzStar and accepted. USF then purchased and paid for the securities and AzStar later loaned the $1,000,000 to USF.

Subsequently, the Arizona Director of Insurance filed a complaint in Arizona Superior Court in Maricopa County pursuant to A.R.S. § 20–613, contending that AzStar was insolvent and should be liquidated. In an order dated November 19, 1992, the Superior Court found AzStar to be insolvent and ordered that AzStar, with the Director acting as receiver, be liquidated pursuant to Arizona's version of the Uniform Insurers Liquidation Act. *See* A.R.S. § 20–631. The Superior Court on November 19, 1992 also issued an injunction enjoining all persons or entities from commencing any suit against AzStar or against any of its assets except through the filing of administrative claims with the re-

ceiver. The court's injunction further enjoined all persons or entities from doing anything interfering with the receiver's management of AzStar's assets or the court's exclusive jurisdiction over those assets. Arizona law specifically grants receivership courts the authority to issue such injunctions. *See id.* § 20–614. Defendant Warfield is the appointed Special Deputy Receiver of AzStar. *See id.* § 20–624.F (allowing for the appointment of special deputy receivers).

When USF attempted to repay the loan by tendering $500,000, plus interest, plus the $500,000 in securities, Warfield rejected the tender as an incomplete, partial payment. This litigation followed. USF has sued the brokers that solicited the sale of the securities for, among other things, violation of the federal securities laws. USF's securities claims provide the basis for federal jurisdiction in this case. USF also has sued AzStar, through the receiver, for breach of contract and for a declaration and determination that the USF tender of repayment conformed with the parties' rights, obligations, and agreements. In its complaint, USF requests the court to grant USF relief in the form of a declaratory judgment and an award of compensatory damages against Warfield.

## III. *SUBJECT MATTER JURISDICTION*

Warfield contends that this court lacks subject matter jurisdiction. As support, Warfield points to the state court injunction, issued pursuant to authority granted by state law, that purports to enjoin all persons and entities from bringing claims against AzStar in a forum other than the receivership court.

It is a well-established general rule of constitutional law that the Supremacy Clause of the United States Constitution prevents states from unilaterally prohibiting federal courts from exercising the jurisdiction which Congress has granted to them. *See General Atomic Co. v. Felter,* 434 U.S. 12, 98 S.Ct. 76, 54 L.Ed.2d 199 (1977); *Donovan v. Dallas,* 377 U.S. 408, 413, 84 S.Ct. 1579, 1582–83, 12 L.Ed.2d 409 (1964); *Begay v. Kerr–McGee Corp.,* 682 F.2d 1311, 1315 (9th Cir.1982).

---

**1.** The transaction actually involved AzStar Holding Company, which is AzStar Casualty Company's parent. In their papers, the parties, for the most part, simply have referred to the defendant in this case as AzStar. The court throughout this order, therefore, has done the same.

AzStar argues that the general rule is not applicable in this case because the McCarran–Ferguson Act specifically exempts laws such as Arizona's statutory scheme for regulating insolvent insurers from the preemptive force of contrary federal laws.

Congress passed the McCarran–Ferguson Act in 1945 in response to a Supreme Court decision that held that the issuance of an insurance policy constituted transaction of interstate commerce, and thus could be the subject of federal regulation. *See United States Dep't of Treasury v. Fabe,* — U.S. —, —, 113 S.Ct. 2202, 2207, 124 L.Ed.2d 449 (1993) (describing history behind adoption of the Act). Through passage of the Act, Congress sought to allocate power in our federal system with regard to the regulation of the business of insurance, and specifically sought to make clear that such power rested presumptively with the States. *See Prudential Life Ins. Co. v. Benjamin,* 328 U.S. 408, 429, 66 S.Ct. 1142, 1155, 90 L.Ed. 1342 (1946). The McCarran–Ferguson Act thus provides that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b).

Warfield contends that application of the federal supplemental jurisdiction statute in this case as a basis for jurisdiction over USF's claims against AzStar runs afoul of the McCarran–Ferguson Act, 15 U.S.C. § 1012(b). More to the point, Warfield asserts that Arizona has enacted laws that vest exclusive jurisdiction in its superior courts over insurer liquidation proceedings and that permit the superior courts to protect that exclusive grant of jurisdiction through the issuance of injunctions if necessary. *See* A.R.S. §§ 20–612, 20–614. Warfield asserts that these laws were enacted "for the purpose of regulating the business of insurance" and are impaired to the extent this court exerts jurisdiction in this case pursuant to 28 U.S.C. § 1367.

The laws relied upon by Warfield are part of the Uniform Insurers Liquidation Act which Arizona, like many other states, has adopted. *See* A.R.S. § 20–631 (1992) (listing provisions within the Arizona Revised Statutes that are part of the Uniform Insurers Liquidation Act).[2] In his reply memorandum, Warfield argues that a recent United States Supreme Court decision, *United States Department of Treasury v. Fabe,* — U.S. —, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993), makes clear that A.R.S. §§ 20–612, 20–614 are laws enacted for the purpose of "regulating the business of insurance." In *Fabe* an Ohio priority statute, which was part of Ohio's scheme for rehabilitating and liquidating troubled insurers, provided that claims by the United States against insolvent insurers were afforded only fifth priority. The Ohio statute conflicted with a federal priority statute that accords the United States first priority with respect to a bankrupt debtor's obligations. The Ohio statute thus conflicted with federal law and, therefore, would be preempted except to the extent that the McCarran–Ferguson Act shielded the statute from normal federal preemption principles.

The United States Supreme Court held that the Ohio statute was a law enacted "for the purpose of regulating the business of insurance," at least to the extent that it granted priority to policyholders's claims over claims made by the United States, and thus was saved from preemption by McCarran–Ferguson. *Id.* — U.S. at —, 113 S.Ct. at 2209. The Court stated that " 'Statutes aimed at protecting or regulating this relationship [between insurer and insured], directly or indirectly, are laws regulating the 'business of insurance,' within the meaning of the phrase.' " *Id.* — U.S. at —, 113 S.Ct. at 2208 (quoting *SEC v. National Securities, Inc.,* 393 U.S. 453, 460, 89 S.Ct. 564, 568–69, 21 L.Ed.2d 668 (1969)). The Court held that the Ohio statute met this standard because it "is designed to carry out the enforcement of insurance contracts by ensuring the payment of policyholders' claims despite the insurance

---

2. A note placed in the annotated version of the Arizona Revised Statutes just prior to section 20–611 lists the states, including Arizona, which have adopted the Act. *See also Lac D'Amiante*

*du Quebec, Ltee v. American Home Assur. Co.,* 864 F.2d 1033, 1039 (3d Cir.1988) (noting that thirty-two states have substantially adopted the terms of the Act).

company's intervening bankruptcy." *Id.* — U.S. at ——, 113 S.Ct. at 2209.

■ The Supreme Court thus found the Ohio statute to be enacted for the purpose of regulating the. business of insurance "[b]ecause it is integrally related to the performance of insurance contracts after bankruptcy." *Id.* Similarly, Arizona's statutory scheme for regulating insolvent insurers is a set of laws designed "for the protection of individual . insurance consumers—individual insureds and their beneficiaries." *Pioneer Annuity Life Ins. Co. v. National Equity Life Ins. Co.*, 159 Ariz. 148, 152, 765 P.2d 550, 554 (Ct.App.1988). A.R.S. §§ 20–612 and 20–614 aid receivership courts in marshaling all the insurance company's assets into one forum where they most efficiently can be monitored, preserved, and eventually distributed to deserving insureds and beneficiaries. The provisions are an integral part of Arizona's scheme for regulating insolvent insurers and ensure efficacy of Arizona's statutory provisions that detail the administrative process through which claims against the insurer are submitted to the receiver and evaluated by the receiver and the receivership court. *See* A.R.S. §§ 20–626 to 20–629. This process presumably is intended to and does conserve insurance company assets for ultimate payment to policyholders as well as other creditors. *Cf. Fabe*, —— U.S. at ——, 113 S.Ct. at 2212, 124 L.Ed.2d 449 (holding that "the preference accorded by Ohio to the expenses of administering the insolvency proceeding is reasonably necessary to further the goal of protecting policyholders"). · The provisions further serve the specific purpose of protecting receivers from having to litigate in multiple forums, which might lead to a

depletion of the insurance company's assets, and ensure that questions relevant to Arizona's statutory scheme ·are resolved by the Arizona courts. Thus, A.R.S. §§ 20–612 and 20–614 apparently have · been enacted to serve the interests of promoting the· performance of insurance contracts during insolvency and, therefore, are statutes regulating the business of insurance. Other courts evaluating similar statutes also have reached the conclusion that the statutes were enacted for the purpose of regulating the business of insurance within the meaning of the McCarran–Ferguson Act. *See, e.g., Eden Financial Group v. Fidelity Bankers Life Ins. Co.*, 778 F.Supp. 278, 280–81 (E.D.Va.1991); ·*Washburn v. Corcoran*, 643 F.Supp. 554, 556 (S.D.N.Y.1986).

■ Warfield has established (1) that A.R.S. §§ 20–612 and 20–614 are laws enacted for the purpose of regulating the business of insurance, (2) that application of 28 U.S.C. § 1367 in this case would impair the operation and effect of A.R.S. §§ 20–612 and 20–614,[3] and (3) that 28 U.S.C. § 1367 does not specifically relate to the business of insurance. The McCarran–Ferguson Act, therefore, appears to apply and this court lacks jurisdiction over USF"s claims against AzStar.[4]

■ The court ·concededly is somewhat hesitant to conclude· that state law and a state court injunction· divest this court of jurisdiction. This is true even though a contrary ruling would result in the anomalous result of this court hearing state law claims against AzStar's assets when the Arizona courts other than the receivership court almost certainly would not in light of the receivership court's injunction. At least one

---

3. Exertion of jurisdiction in this case clearly would impair the Arizona laws which grant exclusive jurisdiction over claims against insolvent insurers to Arizona's superior courts.

4. In *Fabe*, the Supreme Court drew a distinction between the provisions of the Ohio statute that favored policyholder claims and administrative expenses over the government's claims—which the Court found to be enacted for the purpose of regulating the business of insurance—and the provision that favored other general creditors over the government—which the Court held was not enacted for the purpose of regulating the business of insurance. At oral argument, coun-

sel for USF relied on this distinction in arguing that A.R.S. §§ 20–612 and 20–614 are not laws enacted for the purpose of regulating the business of insurance. Apparently counsel was arguing that the distinction is relevant because USF is a general creditor and not a policyholder. The court rejects this argument. Arizona's statutory exclusive jurisdiction statutes serve the interests of all creditors, and thus are similar to the administrative expenses provision in *Fabe* which the Court found to be enacted for the purpose of regulating the business of insurance. , *See* —— U.S. at ——, 113 S.Ct. at 2212. . .

court of appeals has rejected the proposition that McCarran–Ferguson and laws such as A.R.S. §§ 20–612 and 20–614 can defeat federal jurisdiction. *See Grimes v. Crown Life Ins. Co.*, 857 F.2d 699, 702 (10th Cir.1988) (concluding that McCarran–Ferguson does not limit the scope of a federal court's diversity jurisdiction), *cert. denied*, 489 U.S. 1096, 109 S.Ct. 1568, 103 L.Ed.2d 934 (1989); *see also Martin Ins. Agency v. Prudential Reinsurance Co.*, 910 F.2d 249, 254 (5th Cir.1990) (stating, without significant discussion, that a state's version of the Uniform Insurer's Liquidation Act does not deprive a federal court of subject matter jurisdiction).[5] *Grimes*, however, does not explain why, in all cases, "McCarran–Ferguson ... did not intend to divest federal courts of the right to apply state law regarding the regulation of insurers in appropriate diversity proceedings." *Grimes*, 857 F.2d at 702. Given the Supreme Court's broad interpretation in *Fabe* of what constitutes "the business of insurance," and the lack of an expressed, supported rationale within the case law for exempting jurisdictional statutes from the reach of McCarran–Ferguson, the court is reluctant to apply McCarran–Ferguson in a manner inconsistent with the Act's terms. The Act states that "*[n]o* Act of Congress shall be construed" to impair state law enacted for the purpose of regulating the business of insurance. 15 U.S.C. § 1012(b) (emphasis added). This court lacks jurisdiction over USF's claims against AzStar.[6]

Although the court's holding that it lacks jurisdiction over USF's claims against AzStar provides a sufficient basis to grant Warfield's motion to dismiss, the court nevertheless will address the other arguments made by Warfield regarding why dismissal is proper. The court does so out of recognition that the Ninth Circuit has not addressed the question of whether the McCarran–Ferguson Act can effectively preempt federal jurisdictional statutes and no consensus exists on the issue within the other circuits.

## IV. *THE SUPPLEMENTAL JURISDICTION STATUTE.*

As stated, USF asserts that jurisdiction over its claims against AzStar is proper pursuant to the supplemental jurisdiction statute, 28 U.S.C. § 1367. Warfield argues that the supplemental jurisdiction statute also provides district court judges with discretion to decline to exercise supplemental jurisdiction. According to Warfield, this is a case in which the court should decline to exercise jurisdiction.

The supplemental jurisdiction statute provides in relevant part: "The district courts may decline to exercise supplemental jurisdiction over a claim ... (a) if—(1) the claim raises a novel or complex issue of State law, ... or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). Warfield contends that USF's complaint raises two novel questions of state law: first, assuming that the alleged agreement between AzStar and USF is executory, whether the receiver can void the contract, and second, whether USF can use the stock as a setoff in payment of the loan.

The parties agree that the two questions pointed to by Warfield have not clearly been decided by the Arizona courts. Nevertheless, they are not particularly novel questions—USF has demonstrated that the same questions have arisen in similar contexts. The court does not read section 1367(c)(1) as indicating that a court should decline jurisdiction any time state law issues may arise in a case that apparently have not been decided

---

5. Both the *Grimes* and *Martin Insurance* courts abstained from exerting jurisdiction pursuant to the *Burford* doctrine.

6. The court, however, rejects Warfield's argument that the court lacks jurisdiction simply because the state court has asserted jurisdiction over all of AzStar's assets. The general rule relied upon by Warfield—that once a court takes control of a res all other courts are deprived of the power to make determinations regarding the

res—is not disputed by USF. The rule, however, to the extent it is still recognized as a rule of jurisdiction, only applies when the second court is asked to entertain an action *in rem, see, e.g., Navajo Life Ins. Co. v. Fidelity and Deposit Co. of Md.*, 807 F.Supp. 1485, 1487 (D.Ariz.1992). The claims brought by Warfield, for breach of contract and for declaratory relief, does not make this an *in rem* proceeding, *see id.* (citing additional cases).

by the state courts. Thus, the court would not be inclined to decline supplemental jurisdiction merely because of the alleged novel questions of law raised by plaintiff's complaint.

■ The court, however, is inclined to agree with Warfield that the pendency of the receivership proceedings in state court provides a compelling reason for declining jurisdiction pursuant to section 1367(c)(4), even if, as discussed *infra*, the pendency of the proceedings is not a sufficient reason for this court to abstain from exerting jurisdiction pursuant to the *Burford* doctrine. For many years, courts have emphasized the necessity for non-interference in state liquidations of insurance companies. *See, e.g., Levy v. Lewis*, 635 F.2d 960, 964 (2d Cir.1980); *Motlow v. Southern Holdings & Security Corp.*, 95 F.2d 721, 725-26 (8th Cir.), *cert. denied*, 305 U.S. 609, 59 S.Ct. 68, 83 L.Ed. 388 (1938). In addition, since the adoption of the supplemental jurisdiction statute courts continue to view comity toward state courts as a factor to consider when applying section 1367(c). *See, e.g., Imagineering, Inc. v. Kiewit Pacific Co.*, 976 F.2d 1303, 1309 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1644, 123 L.Ed.2d 266 (1993); *United Wire, Metal & Mach. Health and Welfare Fund v. Morristown Memorial Hosp.*, 793 F.Supp. 524, 526 (D.N.J.1992). USF provides no support for its position that section 1367(c)(4) should not be invoked unless circumstances exist that would require a court to abstain anyway pursuant to one of the Supreme Court's abstention doctrines.[7] Certainly such an interpretation of section 1367(c)(4) would render the statutory provision almost nugatory. The court, therefore, finds the facts of this case to present circumstances sufficiently compelling to permit this court to not exert supplemental jurisdiction over USF's claims against Warfield.

## V. ABSTENTION

Warfield contends that the court should abstain from exerting jurisdiction pursuant to doctrines derived from the Supreme Court's decisions in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and other federal decisions interpreting the Supreme Court cases.

### A. Burford Abstention

■ In general terms, a doctrine known as *Burford* abstention is concerned with protecting complex state administrative schemes from undue interference by federal courts. *See New Orleans Public Serv., Inc. v. Council of City of New Orleans [NOPSI]*, 491 U.S. 350, 357, 109 S.Ct. 2506, 2512, 105 L.Ed.2d 298 (1989). Pursuant to the doctrine, federal courts, in limited circumstances, may, in their discretion, dismiss a case if entertaining the case would significantly interfere with state efforts to establish a coherent policy with respect to a matter of substantial public concern. *Id.* The federal courts are fully in disarray, however, regarding in just what circumstances the doctrine should be applied.

The applicability of the *Burford* doctrine in the context of claims brought in federal court against an insolvent insurer involved in state court liquidation proceedings has been addressed by numerous courts. Prior to the Supreme Court's decision in *NOPSI* in 1989, the great majority of courts held that the *Burford* doctrine applies when a state has in place a comprehensive process for the liquidation of insurance companies. *See, e.g., Lac D'Amiante du Quebec, Ltee v. American*

---

7. USF does cite to language in a Practice Commentary written by David D. Siegel that appears in the 1993 supplement to 28 U.S.C.A. § 1367. In the Commentary, Siegel contends that the first two grounds listed in § 1367(c) for declining jurisdiction are similar to the grounds used by the courts to justify some of the abstention doctrines and should, therefore, be interpreted consistent with those doctrines. This court, however, has not relied on either § 1367(c)(1) or § 1367(c)(2). Siegel also notes that any dismissal under § 1367(c) has the same effect as a dismissal pursuant to one of the abstention doctrines and, therefore, should be carefully justified. The court does not interpret this comment as suggesting the court must find that the rigid requirements of a particular abstention doctrine are satisfied before the court can dismiss supplemental claims pursuant to § 1367(c)(4).

*Home Assur. Co. [LAQ* ], 864 F.2d 1033, 1045 (3d Cir.1988); *Grimes v. Crown Life Ins. Co.,* 857 F.2d 699, 706 (10th Cir.1988); *Law Enforcement Ins. Co. v. Corcoran,* 807 F.2d 38, 44 (2d Cir.1986), *cert. denied,* 481 U.S. 1017, 107 S.Ct. 1896, 95 L.Ed.2d 503 (1987). Since the *NOPSI* decision, however, the federal courts are greatly split on the issue of the *Burford* doctrine's applicability when cases are brought in federal court against insolvent insurers involved in state liquidation proceedings. *Compare Fragoso v. Lopez,* 991 F.2d 878, 882–84 (1st Cir.1993) (stating that "NOPSI cabins the operation of the *Burford* doctrine"; court did not abstain) *and Melahn v. Pennock Ins., Inc.,* 965 F.2d 1497, 1505 (8th Cir.1992) (refusing to apply the *Burford* doctrine and concluding that *NOPSI* undermined prior cases applying *Burford* ) *and University of Md. v. Peat Marwick Main & Co.,* 923 F.2d 265, 272 (3d Cir.1991) (intimating that *NOPSI* might have undermined the Third Circuit's prior decision in *LAQ* ) *with Barndhardt Marine Ins., Inc. v. New England Int'l Surety of Am.,* 961 F.2d 529, 531 (5th Cir.1992) (applying *Burford* in a case involving pending state liquidation proceedings) *and Hartford Casualty Ins. Co. v. Borg–Warner Corp.,* 913 F.2d 419, 426 (7th Cir.1990) (same) *and Navajo Life Ins. Co. v. Fidelity and Deposit Co. of Md.,* 807 F.Supp. 1485, 1490 (D.Ariz.1992) (same). Because the Ninth Circuit has not addressed the issue of *Burford* 's applicability when a federal court defendant is involved in liquidation proceedings in state court, and because of the significant divergence in decisions from other courts, a comprehensive review and analysis of the applicable principles appears necessary.

### 1. *Burford v. Sun Oil Co.*

The plaintiff in *Burford,* the Sun Oil Company, brought suit in federal district court attacking an order of the Texas Railroad Commission which granted Burford the right to drill four oil wells on his property. *Id.* 319 U.S. at 316–17, 63 S.Ct. at 1098–99. Despite what its name implies, the Railroad Commission was charged with regulating Texas' oil fields, which included the particularly difficult task of regulating the spacing of oil wells. *Id.* at 321, 63 S.Ct. at 1101. As a means of regulating well spacing, the Commission enacted a rule that provided for certain minimum spacing between wells, but allowed for exceptions to be made when necessary "to prevent waste [i.e., the loss of oil] or to prevent the confiscation of property [i.e., to prevent undue restrictions on the right of a property owner to recover the oil beneath his property]." *Id.* at 322, 63 S.Ct. at 1101. The Commission's decisions as to whether to grant exceptions to the spacing rules were often challenged either by land owners requesting an exception or by adjoining land owners, such as Sun Oil, who feared that too much activity on surrounding tracts would allow oil to be sucked out from under their land.

As a means of ensuring adequate review of the Commission's decisions regarding well spacing, the Texas legislature established a system of judicial review by its own state courts. The Commission's orders could be appealed to a state district court in a particular county, and further review, if desired, could be sought in a particular branch of the state's court of civil appeals and then in the state Supreme Court. *Id.* at 325, 63 S.Ct. at 1103. The United States Supreme Court described the Commission and the Texas state courts as "working partners," *id.* at 326, 63 S.Ct. at 1103, that aided each other in resolving the difficult questions that persistently arose concerning the well spacing rule, *id.* at 325–27, 63 S.Ct. at 1103–04.

After the Commission granted Burford an exception to the well spacing rule, Sun Oil attempted to circumvent state court review by filing in federal court, challenging the Commission's application of its own rule as violative of relevant state law standards as well as of Sun Oil's due process rights. *Id.* at 317, 63 S.Ct. at 1099. Sun Oil's federal suit, according to the Supreme Court, was "a simple proceeding in equity to enjoin enforcement of the Commission's order." *Id.* After declaring that "federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy," the Court phrased the issue before the Court as follows: "Assuming that the federal district court had jurisdic-

tion, should it, as a matter of sound equitable discretion, have declined to exercise that jurisdiction here?" *Id.* at 318, 63 S.Ct. at 1099.

The Court concluded that the district court should have abstained from exerting jurisdiction over Sun Oil's claim. The court appeared to rely on the following factors in making its decision: (1) the issue being addressed by the state administrative agency and the state courts was of substantial state concern; (2) the principal responsibility of regulating the state concern had been left by the federal government to the state; (3) the state had constructed a regulatory system that provided adequate judicial review to those contending to be harmed by the Commission's decisions; (4) the decisions made by the Commission and the courts involved both discretion and expertise; (5) interference by the federal courts would cause disruption in the form of potentially frequent decisions inconsistent with state court decisions and made without adequate expertise; and (6) the inability of the federal courts to have made valuable contributions to the Texas system of regulation.

### 2. *Post–Burford Decisions Involving Insolvent Insurers*

As noted, a number of federal courts have concluded that *Burford* abstention is appropriate when a party opposing federal jurisdiction is an insolvent insurer involved in state liquidation proceedings pursuant to the state's version of the Uniform Insurers Liquidation Act. These courts have concluded that federal adjudication would disrupt the regulatory scheme adopted by many states for the liquidation of insurers sufficiently to warrant abstention.

Courts have looked to a number of specific factors when considering whether abstention is appropriate in the insurer insolvency context. First, courts have agreed that the regulation of insolvent insurance companies is the type of strong state interest in which application of *Burford* can be proper. *See LAQ*, 864 F.2d at 1045. The existence of the strong state interest in this area is evidenced by the McCarran–Ferguson Act which expressly asserts that the interests of the States in this area is superior to any federal

interests. *See Hartford Casualty*, 913 F.2d at 426; *LAQ*, 864 F.2d at 1038; *Grimes*, 857 F.2d at 703.

Second, many abstaining courts have found a parallel between the Commission and the state court's relationship in *Burford* and the relationship between state directors of insurance and the state courts under the Uniform Insurers Liquidation Act. *See Grimes*, 857 F.2d at 705; *Law Enforcement Ins. Co.*, 807 F.2d at 43; *Navajo Life Ins. Co.*, 807 F.Supp. at 1489; *Mondrus v. Mutual Benefit Life Ins. Co.*, 775 F.Supp. 1155, 1158 (N.D.Ill. 1991).

Third, courts have examined the issues raised by the parties in the federal suit. When the plaintiff's claims in the federal suit are grounded in federal law, courts usually have not abstained. *See Central States Etc. v. Old Security Life Ins. Co.*, 600 F.2d 671, 676–77 (7th Cir.1979). *But see Levy*, 635 F.2d at 963–64 (abstaining even though plaintiffs' claims based on ERISA). In such circumstances, the federal courts have a significant interest in exerting jurisdiction that courts have found to outweigh any articulated interference with the liquidation proceedings. When the non-insurer's claims are grounded in state law but do not require review of issues directly related to the liquidation proceedings or state policy, courts usually have abstained. *See, e.g., LAQ*, 864 F.2d at 1047; *Navajo Life Ins. Co.*, 807 F.Supp. at 1490. Finally, courts have been particularly likely to abstain when resolution of the plaintiff's claims requires resolution of issues that are either likely to arise in the liquidation proceedings or that interfere directly with the liquidation scheme. *See Hartford Casualty*, 913 F.2d at 426; *Grimes*, 857 F.2d at 705–06. *But see Pennock Ins. Co.*, 965 F.2d at 1504 (refusing to abstain even though only state law claims were raised and "the issues in the case [were] directly relevant to the comprehensive scheme established by Missouri to govern the actions of insolvent insurers").

Fourth, the issue which the courts have found the most basis for disagreement is the extent to which exertion of federal court jurisdiction disrupts the state processes enacted for the purpose of dealing with insur-

ance company liquidations. A number of courts have found that the very existence of actions brought outside of the receivership court to be significantly disruptive. Such actions allegedly defeat the state's strong interest in centralizing claims, potentially lead to uneven treatment of claimants, cause receivers to litigate in unfamiliar forums, and defeat the efficient framework established by the state for resolving claims brought against insolvent insurers. *See, e.g., Corcoran v. Ardra Ins. Co.*, 842 F.2d 31, 37 (2d Cir.1988); *Corcoran*, 807 F.2d at 44; *Levy*, 635 F.2d at 964; *Motlow v. Southern Holding & Securities Corp.*, 95 F.2d 721, 725–26 (8th Cir.), *cert. denied*, 305 U.S. 609, 59 S.Ct. 68, 83 L.Ed. 388 (1938). The classic statement of this position was set forth years ago in the *Motlow* decision:

> Furthermore, we think there is no more reason for making the administration of the estate of an insolvent insurance company by a statutory liquidator under proceedings commenced in the court of a state, subject to the jurisdiction of other courts, than for making the administration of such an estate in the hands of an equity receiver appointed by a court, subject to the jurisdiction of other courts. *Experience has demonstrated that, in order to secure an economical, efficient, and orderly liquidation and distribution of the assets of an insolvent corporation for the benefit of all creditors and stockholders, it is essential that the title, custody, and control of the assets be intrusted to a single management under the supervision of one court.... This should be particularly true as to proceedings for the liquidation of insolvent insurance companies.*

95 F.2d at 725–26 (emphasis added).

At least one federal court of appeals, however, has questioned the degree to which federal jurisdiction interferes with pending insurer liquidation proceedings. In *Fragoso v. Lopez*, 991 F.2d 878 (1st Cir.1993), the court asserted that in the insurer insolvency context, unlike the situation in *Burford*, the federal courts are not being asked to review the proceedings or orders of state administrative agencies. *Id.* at 883. Thus, the interference with the actual state regulatory

scheme is not so direct, and does not result in circumvention of the expertise obtained by the state administrative agency and that of local courts designated to regularly review the decisions of the agency. Instead, according to the *Fragoso* court, in most cases federal court review "will have at most an indirect effect on the liquidator's claims process by potentially giving rise to an additional claim against the insolvent insurance company." *Id.* at 884.

### 3. *New Orleans Public Serv., Inc. v. Council of City of New Orleans [NOPSI]*

In *NOPSI* the Supreme Court churned up issues pertinent to *Burford* abstention analysis that had appeared to be settled. The court's opinion began by emphasizing that the federal courts' obligation to adjudicate claims within their jurisdiction is " 'virtually unflagging,' " and that abstention remains 'the exception, not the rule.' " *Id.* 491 U.S. at 358–60, 109 S.Ct. at 2513. The court then set forth the following description of the doctrine which has led some courts to believe that the court narrowed the *Burford* doctrine:

> Where timely and adequate state court review is available, a federal court *sitting in equity* must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar"; or (2) *where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."*
>
> ....
>
> While *Burford* is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases where there is a "potential for conflict" with state regulatory law or policy.

491 U.S. at 360–62, 109 S.Ct. at 2514 (emphasis added) (sources omitted).

The *NOPSI* Court's description of the *Burford* doctrine thus raises the issue of whether the doctrine is only available in cases in which equitable relief is being requested. The claims brought and relief sought by USF are not equitable. *NOPSI* also appears to require courts to focus carefully on the extent to which federal review actually would disrupt the state court administrative scheme. Something more than the potential for mere conflict appears to be required under *NOPSI*.

### 4. *Tucker v. First Md. Savings & Loan, Inc.*

USF relies heavily on the Ninth Circuit's decision in *Tucker v. First Maryland Savings & Loan, Inc.*, 942 F.2d 1401 (9th Cir. 1991), which was decided after *NOPSI*. In *Tucker* a plaintiff brought suit in federal district court in Arizona against a Maryland savings and loan institution which was in receivership in Maryland due to its insolvency. The plaintiff's claims against the defendant were entirely based on state law. *Id.* at 1403, 1406. The receiver and savings and loan contended, and the district court agreed, that, in light of a complex scheme enacted by Maryland for handling insolvent savings and loans, the district court should abstain from exerting jurisdiction over Tucker's claims.

On appeal, the Ninth Circuit stated that the following factors generally are required for abstention to be appropriate:

> (1) that the state has concentrated suits involving the local issue in a particular court; (2) the federal issues are not easily separable from complicated state law issues with which the state courts may have special competence; and (3) that federal review might disrupt state efforts to establish a coherent policy.

*Id.* at 1405. Based on these criteria the court found that abstention was not warranted.

Importantly, the court found that Maryland indeed had provided a comprehensive framework for the administration of receivership proceedings for insolvent savings and loans. *Id.* In addition, the court noted that powers over such proceedings had not only been vested in one court, but in one judge.

*Id.* at 1406. The court also specifically found that the issue being addressed by Maryland's scheme was a matter of substantial state concern. *Id.* The court nevertheless refused to abstain because it found that permitting Tucker to proceed with his claim would not circumvent the Maryland scheme for liquidation given that the Maryland scheme did not contain a provision designed to resolve a non-depositor suit such as Tucker's. *Id.* at 1406 n. 3. The court also found the case to be somewhat unusual in that a Maryland party was requesting that a case brought pursuant to Arizona law be sent back to Maryland on the ground that the case affected application of Maryland's laws. *Id.* at 1407. According to the court, *Burford* abstention is appropriate only "where the issues sought to be adjudicated in federal court are primarily questions regarding that state's laws." *Id.* Finally, the court concluded, without material elaboration, that a ruling by the federal court on Tucker's claims would not interfere with Maryland's regulatory scheme for rehabilitating and liquidating troubled insurers. *Id.*

### 5. *Applying Burford*

■ The court concludes that the *Burford* doctrine is not applicable to this case. Although the question is a close one, decisional law since *NOPSI* indicates that abstention would not be proper in this case.

A number of factors favor abstention. First, there is no dispute that USF's claims against Warfield present no issues of federal law. Second, the court, as it already has stated, agrees with the many courts that have concluded that the exertion of federal jurisdiction does disrupt a state's efforts to liquidate an insurer's assets in an orderly and efficient manner under the Uniform Insurers Liquidation Act. Third, considerations of comity exist in this context that clearly support abstention.

Nevertheless, assuming that the court has jurisdiction over USF's claims against Warfield, the court would not abstain mostly because the court would in no way have to review decisions made by the receiver or the receivership court. In addition, the claims

raised by USF do not relate to the liquidation proceedings or state policy. Under these circumstances, although federal court review would be somewhat disruptive of Arizona's scheme for liquidating insurers, the court does not believe that federal court adjudication of plaintiff's claims "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *NOPSI*, 491 U.S. at 361, 109 S.Ct. at 2514. A contrary ruling would mean that the mere existence of a comprehensive state apparatus to handle a specific class of problems would automatically require abstention. Such an approach to *Burford* abstention would appear to be too liberal in light of *NOPSI. See Fragoso*, 991 F.2d at 885; *Pennock Ins. Co.*, 965 F.2d at 1505; Erwin Chemerinsky, *Federal Jurisdiction* § 12.2.3, at 112 (Supp.1992).

The court also disagrees with Warfield that if USF's claims were allowed to proceed in this court and were found to be successful, then USF would effectively circumvent the state statutory scheme by being able to execute its judgment directly against AzStar's assets. The court notes that even if USF proceeded to judgment, it would have to be satisfied with whatever declaratory relief the court granted; the court would not issue a money judgment permitting USF to execute directly against AzStar's assets. *See LAQ*, 864 F.2d at 1037, 1042 (validating the district court's decision to issue only declaratory relief and forcing the successful plaintiff to assert its claims in the liquidation proceedings).

Finally, the court rejects Warfield's assertion that the policy underlying the McCarran–Ferguson Act requires abstention in this case. Certainly, the existence of the McCarran–Ferguson Act is a policy favoring abstention. In *Tucker*, however, the court expressly recognized the substantiality of the

problem confronted by Maryland and nevertheless did not abstain. 942 F.2d at 1406. Thus, although the *Burford* issue in this case is a very close one, the court concludes that, under recent case law, abstention would not be appropriate.[8]

### B. *Younger Abstention*

■ In *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the United States Supreme Court held that federal courts may not enjoin pending state court criminal proceedings. The doctrine has been expanded beyond the criminal context to prevent courts from restraining state civil and even state administrative proceedings. *See Ohio Civil Rights Comm'n v. Dayton Christian Schools*, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (holding that district court should have abstained in case involving state administrative proceeding); *see also Worldwide Church of God, Inc. v. California*, 623 F.2d 613 (9th Cir.1980). In one case, *Levy v. Lewis*, 635 F.2d 960, 964–65 (2d Cir.1980), the court required abstention under *Younger* due to pending state court liquidation proceedings under the Uniform Insurers Liquidation Act. Warfield requests this court to follow the *Levy* decision and declare that abstention is proper under *Younger*.

Since the *Levy* decision, most courts have rejected abstention arguments based on *Younger* in the insurer insolvency context. *See, e.g., Navajo Life Ins. Co.*, 807 F.Supp. at 1488; *General Ry. Signal Co. v. Corcoran*, 748 F.Supp. 639, 644–45 (N.D.Ill.1990); *see also Law Enforcement Ins. Co.*, 807 F.2d at 44 n. 9 (noting that *Younger* abstention was appropriate in *Levy* because the receiver already had moved in the receivership court for approval of his disallowance of the federal plaintiff's claim). This court also concludes

---

**8.** Abstention pursuant to the *Burford* doctrine in this case might also be inappropriate because USF's complaint does not seek equitable relief. Although in dicta, the *NOPSI* Court implied that *Burford* abstention might only be proper when a federal court is "sitting in equity." 491 U.S. at 361, 109 S.Ct. at 2514. One federal court of appeals since *NOPSI* has concluded that the *Burford* doctrine is only available when equitable relief is being requested. *See Fragoso*, 991 F.2d at 882. Another has suggested that the issue is still open. *See General Glass Co. v. Monsour Medical Found.*, 973 F.2d 197, 202 (3d Cir.1992). Because of the court's ruling on the *Burford* abstention issue and because neither party has raised the issue, the court has not found it necessary to analyze whether the *Burford* doctrine is only applicable when a plaintiff is requesting equitable relief.

that *Younger* abstention is not appropriate in this context. As interpreted by the Ninth Circuit, the doctrine only applies when a request is made either to restrain pending state proceedings or interpret state law in a way that would interfere with state administrative proceedings. *See, e.g.,* 723 F.2d 1394, 1402 n. 5 (9th Cir.1983), *cert. denied,* 467 U.S. 1252, 104 S.Ct. 3536, 82 L.Ed.2d 841 (1984); *Turf Paradise, Inc. v. Arizona Downs,* 670 F.2d 813, 820 (9th Cir.), *cert. denied,* 456 U.S. 1011, 102 S.Ct. 2308, 73 L.Ed.2d 1308 (1982). Under the facts of this case, the court would not be required to restrain the receivership proceedings or decide issues of state law that affect the proceedings pending in state court. *Younger* abstention, therefore, is not appropriate.

### C. *Colorado River Abstention*

██ In certain rare circumstances, the Supreme Court has stated that the federal courts should decline to exercise jurisdiction out of deference to pending state court proceedings. *See Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 818, 96 S.Ct. 1236, 1246–47, 47 L.Ed.2d 483 (1976). Numerous courts have rejected the application of the doctrine in contexts similar to that before this court. *See, e.g., Hartford Casualty Ins. Co.,* 913 F.2d at 425; *Law Enforcement Ins. Co.,* 807 F.2d at 44 n. 9 (noting that the *Levy* court's reliance on the *Colorado River* doctrine appears to have been undermined by later case law). Given that no state court proceedings are pending that are addressing USF's claims, duplicity of litigation, the primary concern underlying the *Colorado River* doctrine, is not possible.

### *Conclusion*

The court grants Warfield's motion to dismiss for lack of jurisdiction. The McCarran–Ferguson Act appears to preclude this court from exerting jurisdiction given A.R.S. §§ 20–612, 20–614, and the state court injunction. To the extent that this court does have jurisdiction over USF's claims against Warfield, the court is inclined to refuse to exercise supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(c)(4). Finally, although not necessary to the court's

decision, the court finds no basis for abstaining from jurisdiction under any of the abstention doctrines relied upon by Warfield. In its discretion, the court refuses to grant Warfield's request that an award of fees be granted against USF. The court reaches this conclusion in part because a major case relied upon by Warfield and found to be persuasive by this court, the *Fabe* decision, was decided after USF brought this suit. The matter of costs should be submitted to the Clerk of the Court in the first instance. *See* Local Rule 49.

IT IS ORDERED granting defendant Warfield's motion to dismiss for lack of subject matter jurisdiction (Doc. 9).