**J. Harlow TUCKER; Turf Village, Inc., an Arizona corporation, Plaintiffs–Appellants,**

**v.**

**FIRST MARYLAND SAVINGS & LOAN, INC., a Maryland corporation, Defendant–Appellee.**

No. 89–16705.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 5, 1991.

Decided Aug. 23, 1991.

Douglas G. Zimmerman and Donn G. Kessler, Jennings, Strouss & Salmon, Phoenix, Ariz., for plaintiffs-appellants.

Larry L. Smith, Henry L. Timmerman, Westover, Killingsworth & Beshears, Phoenix, Ariz., for defendant-appellee.

Before HUG, ALARCON and WIGGINS, Circuit Judges.

HUG, Circuit Judge:

Plaintiffs-appellants J. Harlow Tucker and Turf Village, Inc. (collectively "Tucker") appeal the district court's judgment staying this diversity action pending resolution of matters involving First Maryland Savings & Loan ("FMSL") that are ongoing in a special Maryland court. This lender liability action by Tucker against FMSL had been removed by FMSL from Arizona state court.

We have jurisdiction to hear this case under 28 U.S.C. § 1291. The district court's decision to abstain is reviewed for an abuse of discretion. *McIntyre v. McIntrye*, 771 F.2d 1316, 1319 (9th Cir.1985). In abstention cases, however, "discretion must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved." *C–Y Dev. Co. v. City of Redlands*, 703 F.2d 375, 377

(9th Cir.1983) (citation omitted). "[U]nless certain exceptional circumstances are present, a district court has little or no discretion to abstain." *Privitera v. California Bd. of Med. Quality Assur.*, 926 F.2d 890, 895 (9th Cir.1991) (citation and internal quotations omitted). A determination that these requirements have been met is reviewed *de novo. Id.*

Under this fairly exacting standard, we must decide whether the district court erred when it stayed Tucker's lender liability action based on abstention grounds under either *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), or *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

## I.

For purposes of this appeal, it is unnecessary to review all the historical facts alleged by Tucker to support his claims of wrongdoing by FMSL. Rather, we will briefly review the facts necessary to our abstention analysis.

In his complaint, Tucker alleges that he entered an agreement to purchase a parcel of property known as Turf Village, located in Maricopa County, Arizona. Subsequently, Tucker met with a representative of FMSL to discuss his request for a participation loan for the acquisition and development of Turf Village. Following initial indications by the FMSL representative that the loan would be made if certain conditions were met, Tucker incorporated Turf Village, Inc. The purpose of the corporation was to acquire title to and develop Turf Village. By letter dated June 20, 1984, FMSL committed $1.75 million dollars to Tucker to acquire the land. Tucker's complaint further alleges that, prior to close of escrow, he and the seller accomplished the conditions required by FMSL. The Turf Village land loan and the real estate sale were closed on June 28, 1984.

Tucker's complaint also alleges that FMSL committed to provide money to him to acquire and build a project in Scottsdale, Arizona. According to the complaint, the acquisition and construction loan for this Scottsdale Highlands, Inc. project closed in August 1984.

While work was proceeding at Scottsdale Highlands, Tucker obtained the permits and variances necessary to begin work at Turf Village. In December 1984, FMSL made a commitment to Tucker for a construction loan on Turf Village. This Turf Village construction loan closed in January 1985.

Construction at Turf Village began in 1985. At that time, FMSL notified Tucker that it was applying for Federal Savings and Loan Insurance Corporation insurance. In order to qualify for this insurance, it was necessary for the Turf Village raw land to be upgraded with on-site improvements. Allegedly, Tucker agreed to place the required improvements on all of the Turf Village land in exchange for FMSL's agreement to recast the land loan with at least another year's interest and the cost of the improvements. Tucker raised the money from outside sources and caused the improvements to be made.

The complaint contains numerous factual allegations to support Tucker's claims of wrongdoing by FMSL. Essentially, Tucker alleges that despite repeated requests, FMSL's agreed loan disbursements to Tucker were often late and FMSL withheld material information from Tucker.

In November 1985, a Maryland state court concluded that FMSL was in an impaired condition and appointed a conservator to oversee its assets. Thereafter, disbursements were late and FMSL ceased advancing any money after March 11, 1986. Tucker then obtained his own financing, relying upon FMSL's assurances that a solution to its problems was imminent and Turf Village would again be funded by FMSL.

FMSL proposed to resume funding the projects in July 1986. It required, however, that Tucker secure additional funding—a condition he could not meet. FMSL then executed a statement of breach of nonperformance on the money loaned to Tucker and commenced foreclosure proceedings on the Turf Village property.

Turf Village, Inc. filed for protection under Chapter 11 of the Bankruptcy Code in October 1987. FMSL obtained a lift of the automatic stay and was the only bidder on the property at the November 1988 trustee's sale. The trustee's deeds, dated November 18, 1988, were duly recorded on November 21, 1988. On March 23, 1989, Tucker filed a *lis pendens* in the Maricopa County Recorder's Office on this real property in connection with its commencement of litigation in state court.

With respect to the Scottsdale Highland project, Tucker had entered into a settlement agreement, which he claims was made under financial duress and required that he waive all claims he may have had against FMSL. Shortly after Turf Village, Inc. filed for protection under Chapter 11, FMSL declared a default in the settlement agreement and the Scottsdale project also filed for protection under Chapter 11 of the Bankruptcy Code. FMSL again moved for and was granted a lift stay and the trustee's sale of the project was completed, with FMSL also acquiring title to Scottsdale Highlands.

Tucker filed suit against FMSL alleging breach of contract, breach of the covenant of good faith and fair dealing, fraud, negligent misrepresentation and constructive fraud. He sought compensatory damages, the imposition of a constructive trust and punitive damages.

FMSL filed a motion to dismiss arguing, among other things, that the court should abstain from the proceedings as FMSL is involved in receivership proceedings in Maryland. Initially, the district court granted the motion to dismiss under the Abstention Doctrine, relying on both *Burford* and *Colorado River*.

Tucker then filed a motion for reconsideration. In deciding the motion, the district court ruled that it had erred in dismissing rather than staying the matter. Accordingly, the order that dismissed the complaint and action was amended and the case was stayed pending a decision of the special Maryland court. Tucker filed a timely notice of appeal from the judgment.

## II.

On appeal, Tucker challenges the district court's decision to abstain from any action on his suit until a special Maryland court has had an opportunity to review all of the claims presented to it regarding FMSL. Because we conclude that the district court's decision to abstain under either *Burford* or *Colorado River* was in error, we reverse and remand this case to the district court.

A. In *Burford*, the Supreme Court determined that a federal court could decline to exercise its jurisdiction to hear a case that involved an essentially local issue arising out of a complicated state regulatory scheme. *Burford*, 319 U.S. at 317–18, 334, 63 S.Ct. at 1099, 1108. *See International Bhd. of Elec. Workers, Local Union No. 1245 v. Public Serv. Comm'n*, 614 F.2d 206, 211 (9th Cir.1980). Specifically, the Court held that it was proper for a federal court to abstain from deciding a challenge to the validity of an order of the Texas Railroad Commission granting the petitioner Burford a permit to drill oil wells in the East Texas oil field. Federal jurisdiction was present on the basis of both diversity of citizenship and federal question—a contention by the oil companies that the order denied them due process of law. Texas had in place a comprehensive regulatory scheme for the allocation of oil resources, which was a matter of substantial state concern. Moreover, the state provided a uniform method for determination of cases by the Commission and state courts to ensure uniformity. Any federal rights at issue could be heard in the state court, with ultimate review of the federal question fully preserved. *Id.* 319 U.S. 333–34, 63 S.Ct. at 1107–08.

Under *Burford*, abstention may be appropriate "to avoid federal intrusion into matters which are largely of local concern and which are within the special competence of local courts." *International Bhd.*, 614 F.2d at 212 n. 1. Recently, the Supreme Court has stated that "[w]hile *Burford* is concerned with protecting complex state administrative processes from undue federal interference, it does not re-

quire abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 362, 109 S.Ct. 2506, 2515, 105 L.Ed.2d 298 (1989) (quoting *Colorado River*, 424 U.S. at 815–16, 96 S.Ct. at 1245).

 In an effort to limit the application of abstention under the *Burford* principle, this circuit generally requires certain factors to be present for abstention to apply: (1) that the state has concentrated suits involving the local issue in a particular court; (2) the federal issues are not easily separable from complicated state law issues with which the state courts may have special competence; and (3) that federal review might disrupt state efforts to establish a coherent policy. *Knudsen Corp. v. Nevada State Dairy Comm'n*, 676 F.2d 374, 377 (9th Cir.1982). If the district court determines that *Burford* abstention is appropriate under the circumstances, dismissal rather than stay of the federal action is normally required.[1] *See Burford*, 319 U.S. at 334, 63 S.Ct. at 1108; *Knudsen*, 676 F.2d at 377.

In May 1985, rumors of financial instability at two Maryland savings and loans, insured by Maryland Savings Share Insurance Corporation ("MSSIC"),[2] triggered a general run on MSSIC-insured thrifts. *See Brandenburg v. Seidel*, 859 F.2d 1179, 1181 (4th Cir.1988). The effect of this panic was to put MSSIC itself into financial danger, perhaps leading to the collapse of Maryland's savings and loan industry. *See id.* In an effort to thwart this impending crisis, Maryland's Governor issued an Executive Order limiting withdrawals from all MSSIC institutions and called the Maryland General Assembly into emergency session. *See id.* In the special sessions held during 1985, the legislature enacted special statutory procedures and created a comprehensive regulatory framework aimed at the state's savings and loan crisis. *See id.* (citing 1985 Md.Laws, 1st Sp.Sess., ch. 1–11; 1985 Md.Laws, 2d Sp.Sess., ch. 3–6). During the General Assembly's regular 1986 session, additional legislation was enacted. *See id.* (citing 1986 Md.Laws, ch. 11–12).

This legislation had two principal components which essentially replaced MSSIC. One of the effects of this legislation was the creation of the Maryland Deposit Insurance Fund ("MDIF"). *See id.* at 1182 (citing Md.Fin.Inst.Code Ann. §§ 10–101 to 10–121). Second, the legislation provided a comprehensive framework for the administration of conservatorship and receivership proceedings for insolvent savings and loan associations. *See id.* (citing Md.Fin.Inst. Code Ann. §§ 9–701 to 9–712).

Certain provisions of the legislation provide for the appointment and administrative powers of a conservator or receiver. *See* Md.Fin.Inst.Code Ann. §§ 9–701 to 9–712. Section 9–709 provides for MDIF or the Federal Deposit Insurance Corporation to be appointed as conservator or receiver of any savings and loan that it insures, and sections 9–710 and 9–711 grant the Maryland circuit court jurisdiction to administer the conservatorship or receivership. *See Seidel*, 859 F.2d at 1182. Section 9–710 grants the state court "exclusive and plena-

---

1. We note that, upon a determination by the district court in this case that *Burford* abstention applied, the case should probably have been dismissed. Here, in deciding Tucker's motion for reconsideration, the district court ruled that it had erred in dismissing rather than staying the matter. Pursuant to this circuit's decision in *Attwood v. Mendocino Coast Dist. Hosp.*, 886 F.2d 241, 243 (9th Cir.1989), the district court concluded that abstention under *Colorado River* warrants a stay of the proceeding in order to keep the federal court open should the state proceeding prove inadequate. (District Court Memorandum and Order, No. Civ. 89–740–PHX–WPC (filed October 11, 1989)). We note that, due to the posture of this case, there is a question of whether granting a stay under *Burford* was appropriate. As this court finds abstention under either the principles of *Burford* or *Colorado River* to be inappropriate in this case, we refrain from any analysis of that issue.

2. In 1962, the Maryland legislature established MSSIC to insure accounts in state-chartered savings and loan associations. MSSIC was given considerable regulatory control over its approximately 100–member institutions. *See Brandenburg v. Seidel*, 859 F.2d 1179, 1181 (4th Cir. 1988).

ry jurisdiction over all claims, actions, and proceedings that are brought by any person and that are related to the assets, property, powers, rights, privileges, duties and liabilities of" an institution or estate, or of MDIF in its capacity as conservator or receiver of a savings and loan institution. *See id.* (quoting Md.Fin.Inst.Code Ann. § 9–710). Finally, Maryland's Court of Appeals appointed one judge, Judge Kaplan, to adjudicate all disputes arising out of the receivership/conservatorship proceedings. *See Seidel,* 859 F.2d at 1182.

In finding the principles of *Burford* applicable to this case, the district court stated that the "statute[s] set forth a pervasive scheme designed to coordinate actions against savings and loan institutions in Maryland that are involved in receivership proceedings." There can be no doubt that this legislation evinces Maryland's intent to control the rehabilitation and liquidation of its insolvent savings and loan associations. We also recognize that this is a matter of substantial state concern. We cannot agree, however, with the district court's conclusion that the principles of *Burford* should apply in this case to re-

quire the federal court in Arizona to abstain from hearing Tucker's suit.

Initially, Tucker brought this suit in Arizona state court alleging numerous counts arising out of a loan agreement between the parties to acquire and develop property located in Maricopa County, Arizona. He sought the imposition of a constructive trust on the parcel of property known as Turf Village, as well as compensatory and punitive damages, attorneys' fees and costs. Subsequently, the action was removed to the United States District Court for the District of Arizona, based on diversity of citizenship jurisdiction. There are no federal questions involved in this litigation. Further, it is undisputed by the parties that the federal district court, sitting in diversity, would apply the substantive law of Arizona. Thus, the federal court would sit in the same posture as the Arizona state court and there should be no different result in the federal proceedings than would have been achieved in the state court proceeding. If abstention were to apply in this case, in effect, the Maryland procedure for liquidating the savings and loan would preclude an action brought in the State of Arizona, in which the applicable substantive law would be Arizona state law.[3]

---

3. Our case is quite unlike the situation faced by the Fourth Circuit in *Seidel.* In that case, depositors of the same failed savings and loan involved in this case brought an action in the United States District Court for the District of Maryland, under the Racketeer Influenced and Corrupt Organizations Act, against former officers, directors, and senior management personnel of the savings and loan association and against former officers and directors of MSSIC. *See Seidel,* 859 F.2d at 1191. The plaintiffs sought damages to compensate them for the losses they suffered *as depositors* because of the defendants' mismanagement and misappropriation of First Maryland's assets. *See id.* The *Seidel* court viewed those circumstances, in light of Maryland's comprehensive statutory scheme regulating the insolvent savings and loans, as presenting "a classic situation for *Burford* abstention." *See id.*

The court noted that any action against the officers and directors for misfeasance of their official duties belonged to MDIF as the thrift's receiver, representing all of its creditors, with damages recovered becoming assets of the institution, to be equitably distributed among all the creditors. *See id.* To allow the plaintiff-depositors to proceed "would permit them to circumvent that statutory distribution scheme by

reaching assets of First Maryland in the hands of third parties, before the receiver can recover them for the institution's estate." *See id.* at 1192. The *Seidel* court also concluded that permitting the plaintiffs to proceed would interfere with various other orders issued by the state receivership court. *See id.*

Here, we do not have a situation whereby permitting Tucker to proceed with his Arizona state causes of action would circumvent and therefore directly interfere with Maryland's comprehensive scheme for liquidation. Nor would it interfere with collateral orders issued by the special Maryland court. Tucker is proceeding directly against the institution, not as a depositor, but based on numerous allegations of violations of a lending agreement. He is relying solely on principles of Arizona state law to resolve his cause of action. Unlike the aggrieved depositors in *Seidel,* there are no provisions in the Maryland scheme designed to resolve this dispute. Nor will resolution of this dispute under Arizona law interfere with Maryland's statutory scheme in a manner that would implicate the concerns and principles contemplated by *Burford.* Rather than losses suffered because of FMSL's mismanagement and misappropriation of depositor assets, Tucker is merely seeking redress for a claimed violation of a contract for

Thus, we do not have the normal type of abstention whereby a federal court defers to the state law in which it sits. Instead, we have, in effect, a federal court sitting in the same posture as a state court deferring to another state proceeding.

Not surprisingly, FMSL has not cited any legal authority for the proposition that one state may enact legislation that effectively deprives another state court of its subject matter jurisdiction to hear cases properly before it. Moreover, we agree with Tucker's contention at oral argument that a ruling by the federal court on Tucker's causes of action will not necessarily interfere with Maryland's comprehensive regulatory scheme for rehabilitating and liquidating its failed state-chartered savings and loans. This litigation only affects the dispute between the parties concerning an Arizona development project.

*Burford* abstention is designed to limit federal interference with the development of state policy. It is justified where the issues sought to be adjudicated in federal court are primarily questions regarding that state's laws. This simply is not the situation before us and we conclude that abstention under the principles set forth in *Burford* was not appropriate in this case.

B. The district court also concluded that abstention was appropriate in this case on the basis of the principles set forth by the Supreme Court in *Colorado River*. Initially, it must be stressed that the Court noted that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813, 96 S.Ct. at 1244.

> The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.

*Id.* (citation and internal quotations omitted).

The Court in *Colorado River* noted that, in some instances, abstention would be proper on the basis of "principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts." *Id.* at 817, 96 S.Ct. at 1246. *Colorado River* abstention is available in order to foster the important objective of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* (citations and internal quotations omitted). The principles of *Colorado River* are to be applied "only in situations involving the *contemporaneous* exercise of concurrent jurisdictions, either by the federal courts or by state and federal courts." *Kirkbride v. Continental Cas. Co.*, 933 F.2d 729, 734 (9th Cir.1991) (finding *Colorado River* doctrine inapplicable because there was no concurrent or pending state court proceeding after case was removed to federal court) (citations omitted) (emphasis in original).

■ It is also important to keep in mind the general rule concerning the proper exercise of federal court jurisdiction as between concurrent state and federal court proceedings. A concurrent action pending in state court is normally no bar to proceedings concerning the same matter in the federal court having jurisdiction. *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246. It is well-settled that federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given them. *Id.* Finally, the Court emphasized that, due to the absence of the weightier considerations of constitutional adjudication and state-federal relations present when considering some of the other abstention doctrines, the circumstances permitting dismissal under principles of *Colorado River* abstention "are considerably more limited." *Id.* at 818, 96 S.Ct. at 1246–47. In *Colorado Riv-*

---

a loan entered into with FMSL. In short, Tucker's claim does not directly relate to depositor

assets of an insolvent savings and loan as did the RICO action in *Seidel.*

**1408**

*er,* the Court concluded that the federal court should defer to the state proceeding when competing water rights in a single river system were being adjudicated in parallel federal and state actions. The principle of "wise judicial administration," and the fact that Congress had waived the federal government's immunity from suit in state court water rights cases, supported the Court's finding of "exceptional circumstances." *Id.* at 817–19, 96 S.Ct. at 1246–47.

■ Several factors must be considered when determining whether *Colorado River* abstention by the federal court would be appropriate. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 23–26, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983); *Colorado River,* 424 U.S. at 818–19, 96 S.Ct. at 1246–47; *Travelers Indem. Co. v. Madonna,* 914 F.2d 1364, 1367 (9th Cir.1990). These factors include: (1) which court has assumed jurisdiction over the property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether federal law provides the rule of decision on the merits; and (6) whether the state court's proceedings are inadequate to protect the federal litigant's rights. *Madonna,* 914 F.2d at 1367.

■ We concluded that *Colorado River* abstention is simply not appropriate nor justified in this case. While the special Maryland court has assumed jurisdiction over FMSL's assets through the receivership proceeding, there is no concurrent state proceeding as contemplated by *Colorado River* or subsequent cases applying that doctrine. Tucker brought suit alleg-

ing violations by FMSL of various rights based on state contract, tort and constructive trust theories. There is no proceeding pending in Maryland that is attempting to resolve these claims. Instead, there was a case filed in an Arizona state court that was removed to federal court on the basis of diversity jurisdiction alone. This cause of action is the only one pending and the parties do not dispute that Arizona law controls. We can see no reason why Tucker should not be permitted to proceed with these claims against FMSL in Arizona state court.[4] Thus, this case appropriately can be decided by the federal district court sitting in that state.

Accordingly, the district court's judgment in this case is reversed, and the case is remanded to the district court.

REVERSED and REMANDED.

---

**4.** Tucker filed a *lis pendens* on the parcel known as Turf Village with the County Recorder's office for Maricopa County on March 23, 1989. FMSL filed a motion to quash the *lis pendens* with the district court subsequent to Tucker's filing of their notice of appeal, arguing that the action stayed by the district court on abstention grounds does not affect the title to real property, but instead seeks recovery of monetary damages. Tucker responded to this motion, arguing that the suit does in fact seek to regain title to this property and, therefore, the action affects real property and the *lis pendens* was appropriately filed. The district court ruled that a deci-

sion on the propriety of the *lis pendens* would directly affect the issues involved on appeal. Thus, the district court concluded it was divested of jurisdiction and declined to rule. *See Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982) (per curiam).

As we are reversing the district court's decision to abstain in this case and remanding the case to the district court, the district court must resolve the issue regarding the propriety of the *lis pendens* in the course of the proceedings pursuant to Tucker's suit.