87 F.3d 290
 96 Cal. Daily Op. Serv. 4326, 96 Daily Journal
D.A.R. 7037,
96 Daily Journal D.A.R. 9443
FIREMAN'S FUND INSURANCE COMPANY, Plaintiff-Appellant,
and
The American Insurance Company; National Surety Corp.;
Associated Indemnity Corporation, et al., Plaintiffs,
v.
Chuck QUACKENBUSH, Commissioner, California Insurance
Companies, Defendant-Appellee.
 No. 92-15861.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 13, 1996.
Decided June 18, 1996.
As Amended on Denial of Rehearing Aug. 5, 1996.
 
 Thomas A. Swanson, General Counsel, Fireman's Fund Insurance Co., Novato, California; David M. Balabanian, Terry J. Houlihan, Stephanie N. Simonds, McCutchen, Doyle, Brown & Enersen, San Francisco, California, for plaintiffs-appellants Fireman's Fund et al.
 William W. Palmer, General Counsel, Reid A. McClaran, Chief Counsel, Robert B. Hagedorn, Brian G. Soublet, Senior Staff Counsel, Department of Insurance; Michael J. Strumwasser, Fredric D. Woocher, Raleigh H. Levine, Strumwasser & Woocher, Santa Monica, California, for defendant-appellee Chuck Quackenbush, Commissioner, California Insurance Companies.
 Appeal from the United States District Court for the Northern District of California, Charles A. Legge, District Judge, Presiding. D.C. No. CV-91-2854-CAL.
 Before: SCHROEDER, D.W. NELSON and KOZINSKI, Circuit Judges.
 D.W. NELSON, Circuit Judge:
 
 
 1
 Appellants Fireman's Fund and related insurance companies ("Fireman's Fund" or "the insurers") brought this action against Appellee John Garamendi,[1] Insurance Commissioner for the State of California ("the Commissioner"), alleging that regulations promulgated by the Commissioner pursuant to an insurance rate rollback initiative violated the Takings, Commerce, Due Process, Equal Protection and Supremacy Clauses, as well as the First Amendment and the McCarran-Ferguson Act. 15 U.S.C. §§ 1011-1015. The district court dismissed the claims as unripe, and invoked the Younger, Burford, and Colorado River abstention doctrines as additional bases for postponing resolution of the issues. We affirm the decision of the district court.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 On November 8, 1988, California voters passed Proposition 103, which required insurers to reduce premium rates to twenty percent below the rates in effect the previous year and to maintain those rates for one year; after that year, insurers would be permitted to increase their rates only after having received the prior approval of the Commissioner. On November 9, a group of insurers petitioned the California Supreme Court to declare portions of Proposition 103 unconstitutional; in the resulting decision, Calfarm Ins. Co. v. Deukmejian, 48 Cal.3d 805, 258 Cal.Rptr. 161, 771 P.2d 1247 (1989), the Court held unconstitutional a provision in the initiative which provided that only those insurers "threatened with insolvency" might be exempt from the rollback, but found that provision severable, and otherwise upheld the proposition. 48 Cal.3d at 818-19, 821-26, 258 Cal.Rptr. 161, 771 P.2d 1247. The Calfarm court emphasized that individual insurers must be permitted to petition the Insurance Commissioner for approval of higher rates, and to make a showing that the rollback rate was confiscatory as applied to them. Id. at 825-26, 258 Cal.Rptr. 161, 771 P.2d 1247. Subsequently, 460 insurers filed 4,089 applications for exemption from the rollback requirements and instituted 50 lawsuits; the Chief Justice of the California Supreme Court, in his capacity as Chairperson of the Judicial Council, ordered the cases consolidated before a single judge in the Los Angeles Superior Court.
 
 
 3
 The Commissioner promulgated regulations for implementing Proposition 103 and evaluating insurance company rates for the rollback year (1988-89);[2] these regulations strictly govern the manner in which an insurer's losses, expenses and profits are to be calculated. They provide that in calculating a firm's losses, actual loss data from 1989 is to be used. Cal.Code Regs. tit. 10 § 2645.4. Fixed expenses are established at the lower of either actual expenses incurred in 1989, or an amount calculated using an efficiency standard.[3] Certain expenses, however, such as those for political contributions and lobbying, must be excluded from the calculus. Cal.Code Regs. tit. 10 § 2644.10.
 
 
 4
 In determining an insurer's allowable profit, the regulations establish the after-tax rate of return as 10%; they further establish for various lines of insurance the appropriate capital base, as calculated by a fixed leverage ratio,[4] to which that rate of return is to be applied. Cal.Code Regs. tit. 10 § 2645.6(a), (b). However, when an insurer has operated on less surplus than is prescribed by the leverage ratios established in the regulations, its actual leverage ratio shall be used. Cal.Code Regs. tit. 10 § 2645.6(c).
 
 
 5
 Moreover, the regulations provide that insurers are entitled to petition the Commissioner for a hearing in which they might either demonstrate that the established rate is confiscatory, or seek approval of higher rates; they may not, however, challenge any of the generic determinations, such as the efficiency standards or leverage ratios, set forth in the regulations. Cal.Code Regs. tit. 10 § 2646.4.
 
 
 6
 The Commissioner made a preliminary determination of Fireman's Fund's rollback obligation and issued an order to show cause why Fireman's Fund should not be liable for the projected amount. Fireman's Fund then challenged the regulations in the district court, alleging that because the generic determinations contained therein require the exclusion of certain expenses, thus treating those expenses as profit, the firms' profit bases are artificially enlarged and their rollback obligations are thereby increased. Fireman's Fund made a similar argument with respect to the leverage ratios, arguing that when generic determinations rather than actual capital figures are used, the capital base is artificially diminished; consequently, when the appropriate rate of return is multiplied by that capital base, the allowable profit will be reduced as well. The insurers argued that the disallowed expenses in conjunction with the decreased capital base will ultimately have the effect of producing a final rate that is confiscatory. They further maintained that these provisions constituted Takings, Due Process, Equal Protection, First Amendment, Commerce and Supremacy Clause as well as McCarran-Ferguson Act violations. The district court dismissed the claims as unripe, and invoked various abstention doctrines as additional bases for refusing to pass upon Fireman's Fund's claims. The insurers now appeal.STANDARD OF REVIEW
 
 
 7
 Ripeness is a question of law reviewed de novo. Dodd v. Hood River County, 59 F.3d 852, 857 (9th Cir.1995).
 
 
 8
 Whether the requirements for abstention have been met is reviewed de novo. Agriesti v. MGM Grand Hotels, Inc., 53 F.3d 1000, 1001 (9th Cir.1995). When the requirements for abstention have been met, the district court's decision whether to abstain is reviewed for abuse of discretion. United States v. Rubenstein, 971 F.2d 288, 294 (9th Cir.1992).
 
 DISCUSSION
 I. Ripeness of the Takings Claims
 
 9
 The district court held that constitutional challenges to rate-making formulas must await their application and the determination of the final rate: "[I]t is only the result and not the rules themselves that is put to a constitutional test." Fireman's Fund v. Garamendi, 790 F.Supp. 938, 949 (N.D.Cal.1992). Relying upon Federal Power Comm'n v. Hope Natural Gas and Duquesne Light Co. v. Barasch, the Commissioner makes a similar argument before this court, maintaining that the methodology employed in rate-making proceedings is irrelevant. See Federal Power Comm'n v. Hope Natural Gas, 320 U.S. 591, 602, 64 S.Ct. 281, 287-88, 88 L.Ed. 333 (1944) ("[I]t is the result reached not the method employed which is controlling. It is not theory but the impact of the rate order which counts. If the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry ... is at an end.") (citations omitted); see also Duquesne Light Co. v. Barasch, 488 U.S. 299, 314, 109 S.Ct. 609, 619, 102 L.Ed.2d 646 (1989) ("[A]n otherwise reasonable rate is not subject to constitutional attack by questioning the theoretical consistency of the method that produced it.... Errors to the detriment of one party may well be canceled out by countervailing errors or allowances in another part of the rate proceeding.").
 
 
 10
 The Commissioner's reliance upon Hope Natural Gas and Duquesne, however, is misplaced, and demonstrates a misunderstanding of Fireman's Fund's claims; indeed, adhering to the Commissioner's very broad proposition would eviscerate the distinction between facial and as-applied challenges. Where it is alleged that a challenged provision will inevitably have an unconstitutional effect, the Supreme Court has in some cases permitted review even when the impermissible consequences have not yet occurred. See Duke Power Co. v. Carolina Envtl. Study Group, 438 U.S. 59, 81-82, 98 S.Ct. 2620, 2634-35, 57 L.Ed.2d 595 (1978) (holding that facial challenge was ripe because actual occurrence of nuclear accident would not advance the court's ability to deal with legal issues and all parties would be adversely affected by delayed resolution); Regional Rail Reorganization Act Cases (Blanchette v. Connecticut General Ins. Corp.), 419 U.S. 102, 143, 95 S.Ct. 335, 358, 42 L.Ed.2d 320 (1974) (holding that "[w]here the inevitability of the operation of a statute against certain individuals is patent, it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions will come into effect."); see also Yee v. City of Escondido, 503 U.S. 519, 534, 112 S.Ct. 1522, 1532, 118 L.Ed.2d 153 (1992) (holding that a challenge to a rent control ordinance was ripe, even where no rent increases had been sought, because the claim was premised on the notion that the ordinance did "not 'substantially advance' a 'legitimate state interest' no matter how it is applied."). It is into this category that Fireman's Fund's claims fall: the insurers make no challenge in this matter to the "theoretical consistency" of the Commissioner's rate-making formula, but instead contend that the method's alleged infirmities necessarily will lead to a confiscatory result.
 
 
 11
 What Fireman's Fund has failed to demonstrate, however, is that application of the regulations will inevitably lead to a confiscatory result. While the regulations provide that insurers may not relitigate or call into question any of the generic determinations established therein, the fact that insurers may otherwise demonstrate that the rates are confiscatory as applied to them suggests that any losses resulting from the use of the generic figures may be compensated for by other factors. Cal.Code Regs. tit. 10 § 2646.4(e) provides:
 
 
 12
 Relitigation in a hearing on an individual insurer's rates of a matter already determined either by these regulations or by a generic determination is out of order and shall not be permitted. However, the administrative law judge shall admit evidence he or she finds ... relevant to the determination of the minimum nonconfiscatory rate ..., whether or not such evidence is expressly contemplated by these regulations, provided the evidence is not offered for the purpose of relitigating a matter already determined by these regulations or by a generic determination.
 
 
 13
 (emphasis added). The fact that considerations beyond those taken into account by the efficiency standards and leverage ratios are part of the calculus strongly indicates that the takings claims are not ripe. We note that a number of insurers who had estimated rollback obligations were eventually found to have no rollback liability at all; there is thus significant support for the suggestion that factors outside of the Commissioner's formula are part of the rollback analysis. Indeed, after a recent administrative hearing, the largest insurer in the state of California was found to have no rollback liability at all. See Appellant's Motion to Enjoin Administrative Hearing, Exhibit A.
 
 
 14
 Moreover, the insurers' takings claims are premised not only on the assumption that employing the generic determinations in rate calculations will effect a taking of the insurers' property by artificially decreasing their expenses and capital bases, but also that using these generic figures will result in a rate of return that is less than 10%. However, it is impossible for us to determine whether the insurers' ultimate rate of return will fall below that amount until the regulations are applied.
 
 
 15
 Additionally, to the extent that the scope of the insurers' claims includes a challenge to the use of the 10% rate itself, the same analysis applies. The insurers claim to "challenge[ ] use of the 10% minimum rate in the context of a comprehensive rate formula that also excludes legitimate expenses from the calculation of the final rate." Until it is established what "other evidence" may be admitted to demonstrate any alleged confiscation, however, we cannot determine whether the challenged provisions necessarily will "reduc[e] profit below the constitutional minimum," whatever that amount may be.
 
 
 16
 Thus, we affirm the district court's holding that the takings claims are not ripe.
 
 II. Ripeness of the Remaining Claims
 
 17
 The insurers maintain that the generic determinations employed in the regulations deny them due process because they are capricious, and equal protection because they arbitrarily discriminate against insurers with above-average expenses; they further argue that the use of national data in determining their rollback obligations is "on its face unwarranted single-state regulation of interstate commerce," and violates the McCarran-Ferguson Act, the Commerce Clause, and their right to due process (the rate component claims). The insurers allege additional due process violations based on the fact that the regulations preclude them from showing in their individual hearings that the rollback rates are confiscatory. See Cal.Code Regs. tit. 10 § 2646.4(e) (barring relitigation of matters determined by regulations or the generic determinations therein). Finally, they contend that the exclusion of political expenses from the rate-making formula violates the First Amendment.
 
 
 18
 The district court held that the rate component claims would not be ripe until the regulations had been applied to the insurers. 790 F.Supp. at 949-50. However, the court also held that the First Amendment claim and the challenge to the relitigation bar need not await application of the regulations. The court held that "[b]ut for the fact that the regulations may never be enforced against plaintiffs," these claims would be ripe. 790 F.Supp. at 950-51.
 
 
 19
 With respect to the rate component claims, the district court's reasoning is sound; however, the court was incorrect in holding that the due process challenge to the relitigation bar need not await application of the regulations, as again, it is unclear what evidence will be admitted in the administrative hearing.
 
 
 20
 Neither is the First Amendment challenge ripe. The insurers do not claim that the regulations prohibit political speech, but only that they prohibit them from being reimbursed for the costs of this speech by consumers. See Renne v. Geary, 501 U.S. 312, 320, 111 S.Ct. 2331, 2338, 115 L.Ed.2d 288 (1991) (holding that respondents failed to demonstrate a live dispute involving the actual or threatened application of the challenged provision to bar political speech); Members of the City Council v. Taxpayers for Vincent, 466 U.S. 789, 797-800, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984) (holding that facial challenges are permitted when legislation creates a risk of the suppression of ideas and is written so broadly that it may inhibit constitutionally protected speech of third parties); Ward v. Rock Against Racism, 491 U.S. 781, 794, 109 S.Ct. 2746, 2755, 105 L.Ed.2d 661 (1989) (referring to the "extraordinary doctrine" that permits facial challenges to some regulations of expression). We need not consider this challenge before the regulations are actually applied because there is little to suggest that they will serve to discourage political speech; we think it safe to assume that it is the hope of political gain or benefit, rather than the opportunity to pass costs on to consumers, that serves as an incentive to engage in the speech here at issue. Cf. United States v. National Treasury Employees Union, 513 U.S. 454, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995) (holding that prohibition on the receipt of honoraria by government employees imposes a burden on expressive activity because such honoraria serve as an incentive to expression).
 
 
 21
 That some of these claims may be ripe, however, does not defeat the argument that review at this time is inappropriate. While the Commissioner no longer argues the propriety of Younger abstention, we hold that abstention under the Burford and Colorado River doctrines remains appropriate.
 
 III. Burford Abstention
 
 22
 In Burford v. Sun Oil Co., 319 U.S. 315, 332, 63 S.Ct. 1098, 1106-07, 87 L.Ed. 1424 (1943), the Supreme Court held that when an issue "clearly involves basic problems of [state] policy[,] ... equitable discretion should be exercised to give the [state] courts the first opportunity to consider them." The Court reiterated its reluctance to pass upon questions turning on largely local issues in Alabama Pub. Serv. Comm'n v. Southern R.R. Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951), where it abstained from deciding whether the Alabama Public Service Commission violated a railroad's due process rights by requiring continued operation of unprofitable railroad lines. In that case, the Court held that review was inappropriate because the success of the federal constitutional challenge primarily depended upon the "local factor of public need for the service rendered." Id. at 347, 71 S.Ct. at 767. In New Orleans Pub. Serv., Inc. v. Council of New Orleans ("NOPSI "), 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989), the Court summarized the controlling principles of the Burford doctrine: Where timely and adequate state-court review is
 
 
 23
 available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of a question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."
 
 
 24
 NOPSI, 491 U.S. at 361, 109 S.Ct. at 2514-15.
 
 
 25
 Moreover, we elaborated upon the circumstances justifying Burford abstention in Tucker v. First Maryland Sav. & Loan, Inc., 942 F.2d 1401 (9th Cir.1991). Under Tucker, the following factors are required: 1) the state must have concentrated suits involving the local issue in a particular court; 2) the federal issues must not be easily separable from complicated state law issues with which the state courts may have special competence; and 3) federal review might disrupt state efforts to establish a coherent policy. Id. at 1405.
 
 
 26
 The district court held that because the First Amendment, Retaliation and Due Process claims were "true" facial challenges, Burford abstention would be inappropriate; however, it held that Burford abstention was proper as to the Takings and Rate Component claims because they could not be presented as facial challenges. Fireman's Fund, 790 F.Supp. at 955.
 
 
 27
 In determining the appropriateness of Burford abstention, we note that the state's attempts to establish a coherent policy are of little consequence, as it is the constitutionality of the state's efforts to do precisely this which is currently in question. See Allstate Ins. Co. v. Sabbagh, 603 F.2d 228, 232 (1st Cir.1979) ("The state has no right to an unconstitutional policy, coherent or otherwise."). The presence of other Burford factors in this matter, however, strongly weighs in favor of abstention: all of the Proposition 103 implementation cases have been consolidated before the Superior Court, and there is little question that the question is one "of substantial public concern." NOPSI, 491 U.S. at 361, 109 S.Ct. at 2514-15.
 
 
 28
 Moreover, of even greater consequence is the fact that there exist "difficult questions of state law" upon which resolution of the federal issues turns; it is this factor which suggests most strongly that Burford abstention is appropriate. In 20th Century Ins. Co. v. Garamendi, 8 Cal.4th 216, 32 Cal.Rptr.2d 807, 878 P.2d 566 (1994), cert. denied, --- U.S. ----, 115 S.Ct. 1106, 130 L.Ed.2d 1072 (1995), the California Supreme Court ruled that both the formulaic method for establishing premium rates and the generic determinations employed in that method were constitutionally permissible. Notwithstanding the breadth of that opinion, however, 20th Century left many issues unresolved, including the scope of the administrative hearing. We again emphasize the critical nature of this issue, as the question of whether use of the regulations will result in the insurers enjoying a rate of return less than 10% cannot be resolved until all of the variables informing the rollback analysis are known. Thus, we conclude that there is a "difficult" or "unresolved" state law question with which the federal issues are intimately conjoined, and that Burford abstention is therefore appropriate.
 
 IV. Colorado River Doctrine
 
 29
 Finally, and perhaps most importantly, we agree with the district court that abstention is appropriate as to all the issues under Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Because of considerations of "[w]ise judicial administration, [the] conservation of judicial resources and comprehensive disposition of litigation," id. at 817, 96 S.Ct. at 1246 (internal quotations omitted), federal abstention and deference to parallel state proceedings is appropriate under Colorado River even when none of the more established doctrines apply. While the district court listed a number of factors relevant to the determination of whether abstention was justified, the Colorado River Court held that "[n]o one factor is necessarily determinative," id. at 818, 96 S.Ct. at 1246-47. We have recognized that forum-shopping can in some cases justify Colorado River abstention, see Travelers Indem. Co. v. Madonna, 914 F.2d 1364, 1371 (9th Cir.1990), and there is some indication that such tactics have been employed in this case, see Fireman's Fund, 790 F.Supp. at 964 ("[T]he multiple and over-lapping assertions of these challenges in state court, before the Commissioner, and in this court causes this court to question [the insurers'] tactics"). Fireman's Fund's claim that it is not now a party to any state proceeding is not determinative, for as the district court notes, in Nakash v. Marciano, 882 F.2d 1411, 1416 (9th Cir.1989), we held that "exact parallelism ... is not required. It is enough if the two proceedings are 'substantially similar.' "
 
 
 30
 We are aware that Colorado River abstention is appropriate only when certain "exceptional circumstances" are present. O'Neill v. United States, 50 F.3d 677, 688 (9th Cir.1995), cert. denied, 516 U.S. 1028, 116 S.Ct. 672, 133 L.Ed.2d 521 (1995). That such circumstances do in fact exist in this matter is evident from the fact that the regulatory scheme currently being challenged appears to be informed by factors external to the regulations that have neither been identified nor been applied in the proceeding before us; we again emphasize that the preliminary rollback obligations of a number of insurers were significantly reduced, and that after a recent hearing, one insurer was found to have no rollback liability at all. Considerations of "wise judicial administration" clearly counsel against our passing upon the insurers' claims.
 
 
 31
 Fireman's Fund asks this Court to pass upon a matter that is still very much in flux, and we decline the offer. Accordingly, we AFFIRM the district court's dismissal without prejudice of the action.
 
 
 
 [1]
 Chuck Quackenbush, the current Commissioner of Insurance for the State of California, has been substituted for Appellee Garamendi
 
 
 [2]
 The regulations here challenged are codified at Cal.Code Regs. tit. 10 §§ 2641.1-2648.4
 
 
 [3]
 The efficiency standard is the maximum allowable ratio of historic underwriting expenses to historic earned premiums. Cal.Code Regs. tit. 10 § 2644.12(b). The regulations govern the determination of the efficiency standards for different lines of insurance. Cal.Code Regs. tit. 10 § 2645.5(c)
 
 
 [4]
 The "leverage factor" or "leverage ratio" is defined in the regulations as the ratio of net written premiums to surplus. Cal.Code Regs. tit. 10 § 2644.17