Aurelio MARTINEZ–ROSADO, et al., Plaintiffs,

v.

INSTITUTO MEDICO DEL NORTE, et al., Defendants.

No. Civ 00–1748 JAF.

United States District Court, D. Puerto Rico.

May 21, 2001.

Antonio Borres–Otero, Woods & Woods, San Juan, PR, for Aurelio Martinez–Rosado, Juana Gomez–Sanchez, Conjugal Partnership Martinez–Gomez, Jaymir Martinez–Gomez, Jannette Martinez–Gomez, plaintiffs.

Jeannette M. Lopez, Pinto–Lugo & Rivera, San Juan, PR, Jose R. Ortiz–Velez, Hato Rey, PR, for Instituto Medico Del Norte, Inc. dba Centro Medico, Wilma N. Vazquez, defendants.

Dennis J. Cruz–Perez, Martinez–Texidor & Fuster, Ponce, PR, Arturo Luciano-Delgado, San Juan, PR, for Municipality of Vega Alta, Centro De Salud Familiar De Bega Alta, defendants.

Municipality of Vega Alta, c/o Hon. Juan Cruzado–Laureano, Gobierno Municipal de Vega Alta, Vega Alta, PR, defendant pro se.

Roberto E. Ruiz–Comas, San Juan, PR, Humberto Vazquez–Sandoval, Gonzalez Castaner, Morales & Guzman, Hato Rey, PR, for Eduardo Rentas–Sierra, Dr., defendant.

Roberto E. Ruiz–Comas, San Juan, PR, for Conjugal Partnership Rentas–Doe, defendant.

Jose E. Otero–Matos, Irizarry, Otero & Lopez, San Juan, PR, for Miguel Polanco–Polanco, defendant.

Jose A. Miranda–Daleccio, * San Juan, PR, Humberto Vazquez–Sandoval, Gonzalez Castaner, Morales & Guzman, Hato Ret, PR, for Carlos Gonzalez–Amparo, Dr., defendant.

Jose A. Miranda–Daleccio, * San Juan, PR, for Conjugal Partnership Gonzalez–Doe, defendant.

Dennis J. Cruz–Perez, Martinez–Texidor & Fuster, Ponce, PR, for AIICO, American International Insurance Company, defendant.

Roberto E. Ruiz–Comas, San Juan, PR, Humberto Vazquez–Sandoval, Gonzalez Castaner, Morales & Guzman, Hato Rey, PR, for SIMED, Sindicato de Aseguradores para la Suscripcion Conjunta de Seguros de Responsabilidad Profesional Medico–Hospitalaria, defendant.

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiffs, Aurelio Martínez Rosado, his wife Juana Gómez Sánchez, their conjugal partnership, and their children Jannette Martínez Gómez and Jaymir Martínez Gómez, bring this suit against Defendants, the Medical Institute of the North, Inc. ("Medical Institute") d/b/a Wilma N.

Vázquez Medical Center, the Family Health Center of Vega Alta ("Health Center"), Dr. Eduardo Rentas Sierra, Dr. Miguel Polanco Polanco, and Dr. Carlos González Amparo, among others, pursuant to the federal Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd (1988 & Supp. I), and negligence statutes of Puerto Rico's Civil Code, 31 L.P.R.A. §§ 5141–42 (1991). Plaintiffs seek compensatory damages.

Defendant Medical Institute moves on abstention grounds to dismiss or stay Plaintiffs' complaint.

## I.

### Factual and Procedural Synopsis

Plaintiffs are the immediate family members of Jollynette Martínez Gómez ("Jollynette"). *Docket Document No. 1.* On June 14, 1998, Jollynette was involved in an automobile accident near Vega Alta, Puerto Rico, at which time she suffered allegedly serious physical injuries. *Id.* Jollynette was taken to the Health Center's emergency room, where Dr. Polanco allegedly attended to her and decided, approximately five minutes after she had entered the Health Center, to discharge and transfer her to the Medical Institute. *Id.* Jollynette purportedly arrived at the Medical Institute's emergency room approximately thirty minutes after her discharge from the Health Center. Less than five hours later, Jollynette died. *Id.*

Plaintiffs filed the present lawsuit against Defendants on June 14, 2000, alleging violations of EMTALA and asserting medical malpractice claims under state law. *Id.* Each Plaintiff seeks over $6,000,000 in damages from Defendants, plus other costs. *Id.*

On September 8, 2000, Defendant Medical Institute moved to dismiss or stay the present proceedings pursuant to the abstention doctrine of *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). *Docket Document No. 21.* Specifically, Defendant Medical Institute contends that in June 1999, Plaintiffs instituted a medical malpractice action against it in the Superior Court of Bayamón, Puerto Rico, which largely mirrors the present complaint. *Id.* Hence, Defendant Medical Institute argues that we should dismiss or stay the case at bar for the following reasons: (1) to avoid duplicative litigation and an inefficient use of judicial resources; (2) to prevent inconsistent rulings and piecemeal litigation; (3) to recognize that the state court litigation is much more advanced; (4) to acknowledge the predominance of state law issues and the capability of the Superior Court in Bayamón to protect Plaintiffs' rights under EMTALA; and (5) to disallow what Defendant Medical Institute considers to be the vexatious or reactive nature of Plaintiffs' federal suit. *Id.*

Plaintiffs oppose Defendant Medical Institute's motion to dismiss. *Docket Document No. 27.* Plaintiffs maintain that: (1) the threat of duplicative litigation and judicial inefficiency are not sufficient conditions for abstention; (2) piecemeal litigation is not a distinct possibility in this case; (3) the state and federal cases are virtually in the same procedural posture; and (4) Plaintiffs have not asserted an EMTALA claim in the state action, and, thus, the state suit will not dispose of all the claims in the federal complaint. *Id.*

In Defendant Medical Institute's reply to Plaintiffs' opposition to the motion to dismiss, Defendant Medical Institute encourages us not to exercise supplemental jurisdiction over Plaintiffs' state law claims. *Docket Document No. 40.* Defendant Medical Institute argues that since medical malpractice claims cannot be

brought pursuant to EMTALA, the exercise of supplemental jurisdiction is not justified in this case. *Id.*

We first elucidate the relevant legal standards before addressing Defendant Medical Institute's arguments concerning supplemental jurisdiction and *Colorado River* abstention.

## II.

### Motion to Dismiss Standard under Rule 12(b)(1)

■ Under Rule 12(b)(1), a defendant may move to dismiss an action against him for lack of federal subject-matter jurisdiction. *See* FED.R.CIV.P. 12(b)(1). Since federal courts are courts of limited jurisdiction, the party asserting jurisdiction has the burden of demonstrating its existence. *See Murphy v. United States,* 45 F.3d 520, 522 (1st Cir.1995) (citation omitted). In assessing a motion to dismiss for lack of subject-matter jurisdiction, a district court "must construe the complaint liberally, treating all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiffs." *Viqueira v. First Bank,* 140 F.3d 12, 16 (1st Cir.1998) (citing *Royal v. Leading Edge Prods., Inc.,* 833 F.2d 1 (1st Cir.1987)). Additionally, a court may review any evidence, including submitted affidavits and depositions, to resolve factual disputes bearing upon the existence of jurisdiction. *See Land v. Dollar,* 330 U.S. 731, 734–35, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Aversa v. United States,* 99 F.3d 1200, 1210 (1st Cir.1996) (citation omitted).

## III.

### Analysis

#### A. *Supplemental Jurisdiction*

■ A district court may exercise supplemental jurisdiction over pendent and ancillary state law claims "that are so re-lated to the [federal question claims] ... that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a) (1993); *Rodríguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1175 n. 8 (1st Cir.1995). Claims arise from the same case or controversy if they share the same nucleus of operative facts. *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am., IA-MAW Dist. Lodge 4,* 132 F.3d 824, 833 (1st Cir.1997) ("A federal court that exercises federal question jurisdiction over a single claim may also assert supplemental jurisdiction over all state-law claims that arise from the same nucleus of operative facts.") (citations omitted).

Supplemental jurisdiction may not be appropriate if the state-law claim "raises a novel or complex issue of State law," or "substantially predominates over the claim or claims over which the district court has original jurisdiction," or if "the district court has dismissed all claims over which it has original jurisdiction," or if "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c); *see Houlton Citizens' Coalition v. Houlton,* 175 F.3d 178, 192 (1st Cir.1999) (holding that the district court should have dismissed without prejudice the town charter claim because it raised a difficult and novel state law question); *Flynn v. City of Boston,* 140 F.3d 42, 47 (1st Cir.1998) (noting that federal courts should not referee employment decisions of local governmental units); *Vera–Lozano v. Int'l Broad.,* 50 F.3d 67, 70 (1st Cir.1995) (affirming district court's exercise of supplemental jurisdiction over state law claims after engaging in section 1367's three-point balancing test).

■ Here, both the EMTALA claims and the state law medical malpractice claims in the federal complaint spring from the circumstances leading to the death of

Jollynette Martínez Gómez. *Docket Document Nô. 1.* Defendant Medical Institute readily admits as much. *Docket Document No. 21, p. 5* ("There is no doubt that the state and federal suits derive from the same transaction or nucleus of operative facts."). Thus, we find that the federal and state claims in Plaintiffs' federal complaint form part of the same case or controversy for section 1367 purposes. *Cf. Lopez–Soto v. Hawayek,* 175 F.3d 170, 171, 177 (1st Cir.1999) (reinstating state law claims which district court had dismissed in EMTALA suit).

We also find that none of the situations justifying dismissal of state law claims, which are envisioned by section 1367, is present in the case before us. The medical malpractice claims do not raise complex or novel issues of state law. The state law claims do not predominate over the EMTALA claims. The EMTALA claims are alive and well in the federal complaint. Lastly, we do not find that this case presents exceptional circumstances justifying dismissal of the medical malpractice claims. *See, e.g., Itar–Tass Russian News Agency v. Russian Kurier, Inc.,* 140 F.3d 442, 448 (2d Cir.1998) (recognizing that judicial economy and efficiency considerations are not exceptional circumstances); *Channell v. Citicorp Nat'l Servs., Inc.,* 89 F.3d 379, 386–87 (7th Cir. 1996) (finding that exceptional circumstances existed in class action of defendants for damages). Thus, we decline the invitation of Defendant Medical Institute to surrender jurisdiction of Plaintiffs' state law claims. *See Hart v. Mazur,* 903 F.Supp. 277, 281 (D.R.I.1995) (retaining supplemental jurisdiction over medical malpractice claims in an EMTALA case).

## B. *Abstention Pursuant to Colorado River and its Progeny*

Federal abstention is appropriate in certain delineated cases due to the dis-

cretion federal courts enjoy in fashioning certain types of relief. *See Colorado River,* 424 U.S. at 813–14, 96 S.Ct. 1236. However, abstention is "the exception, not the rule. 'The doctrine of abstention ... is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it....' " *Id.* at 813, 96 S.Ct. 1236 (quoting *Allegheny County v. Frank Mashuda Co.,* 360 U.S. 185, 188, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959)). Accordingly, "[a]bstention rarely should be invoked." *Ankenbrandt v. Richards,* 504 U.S. 689, 704, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992) (citation omitted).

In *Colorado River,* the Supreme Court "established a doctrine governing the stay or dismissal of federal lawsuits in circumstances in which the three traditional categories of abstention were inapplicable." *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts,* 915 F.2d 7, 11 (1st Cir.1990) (*"Villa Marina I"*). The Court held that in "exceptional circumstances" a federal court could decline to exercise jurisdiction based on "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.' " *Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236 (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.,* 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952)); *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts,* 947 F.2d 529, 532 (1st Cir.1991) (*"Villa Marina II"*). Subsequently, the Supreme Court has emphasized the narrowness of this rule given the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236; *see also Deakins v. Monaghan,* 484 U.S. 193, 203, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988) (quoting *Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236);

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

■ The *Colorado River* abstention doctrine consists of a two-part test. *Admin. Comm. v. Gauf*, 188 F.3d 767, 772 (7th Cir.1999). First, the actions in the federal and state forums must be parallel, i.e., the two suits must involve substantially the same parties who are litigating substantially the same issues. *Al–Abood v. El–Shamari*, 217 F.3d 225, 232 (4th Cir.2000) (citations omitted); *Gauf*, 188 F.3d at 772 (citation omitted); *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir.1998) (citation omitted); *Dittmer v. County of Suffolk*, 146 F.3d 113, 117 (2d Cir.1998) (citations omitted); *Ryan v. Johnson*, 115 F.3d 193, 195–96 (3d Cir.1997); *Elmendorf Grafica, Inc. v. D.S. Am. (East), Inc.*, 48 F.3d 46, 50 (1st Cir.1995) (citation omitted). Exact parallelism, however, is not required for abstention to be an option for a federal court. *Fireman's Fund Ins. Co. v. Quackenbush*, 87 F.3d 290, 297 (9th Cir.1996) (citation omitted). The second part of the *Colorado River* doctrine requires a balancing of factors. *Gauf*, 188 F.3d at 772.

■ The First Circuit has summarized the illustrative factors which courts should examine to determine the existence of "exceptional circumstances": (1) whether the federal or state court has assumed jurisdiction over property; (2) whether either forum creates greater inconvenience to the litigants; (3) whether piecemeal litigation can be avoided; (4) whether the order in which the forums obtained jurisdiction is significant; (5) whether state or federal law controls; and (6) whether the state forum provides adequate protection of the parties' rights. *See Rivera–Puig v. Garcia–Rosario*, 983 F.2d 311, 320–21 (1st Cir. 1992) (quoting *Burns v. Watler*, 931 F.2d 140, 146 (1st Cir.1991)). Another factor

often considered is the possible vexatious or reactive nature of the federal lawsuit. *See Villa Marina II*, 947 F.2d at 532. In weighing the factors, the court must give "weight to the heavy presumption favoring the exercise of jurisdiction." *Villa Marina I*, 915 F.2d at 13. Also, "the facial neutrality of a factor is a basis for retaining jurisdiction, not for yielding to it." *Woodford v. Cmty. Action Agency of Greene County, Inc.*, 239 F.3d 517, 522 (2d Cir.2001).

As an initial matter, we ascertain whether the present suit is substantially parallel to the action before the Superior Court in Bayamon. We assume for the purposes of this discussion that the parties in both the federal and state action are substantially the same. With regard to the similarity of the issues presented, as we have mentioned, Plaintiffs in the federal suit allege violations of EMTALA and assert medical malpractice claims under state law. *Docket Document No. 1*. In the state action, Plaintiffs assert medical malpractice claims pursuant to the general negligence statute of Puerto Rico's Civil Code. *Docket Documents No. 33*.

■ We find that these two actions do not allege substantially similar claims. In 1996, Congress adopted EMTALA to address the problems created by the refusal of hospital emergency rooms to treat patients who did not carry adequate medical insurance. *Reynolds v. MaineGeneral Health*, 218 F.3d 78, 83 (1st Cir.2000). Uninsured patients have a remedy against a hospital pursuant to EMTALA in certain situations where a state malpractice claim is not available. *See id.*; 42 U.S.C. § 1395dd(d)(2)(A). EMTALA includes two key provisions: 1) hospitals must provide appropriate screening to emergency room patients to determine whether an emergency medical condition exists; and 2) hospitals must provide services neces-

sary to stabilize the patient's condition before releasing him. *Correa v. Hosp. San Francisco,* 69 F.3d 1184, 1190 (1st Cir. 1995).

■ EMTALA, however, is not a federal malpractice statute. On the contrary, courts have consistently held that "EMTALA does not create a cause of action for federal medical malpractice." *Correa,* 69 F.3d at 1192 (citation omitted); *Summers v. Baptist Med. Ctr. Arkadelphia,* 91 F.3d 1132, 1137 (8th Cir.1996) ("So far as we can tell, every court that has considered EMTALA has disclaimed any notion that it creates a general federal cause of action for medical malpractice in emergency rooms.").

Since Plaintiffs' federal and state actions assert two distinct set of claims, we find that these two suits are not parallel. *Cf. Al–Abood v. El–Shamari,* 217 F.3d at 232 (finding that suits were not identical because different legal theories would have to be asserted); *Baskin v. Bath Township Bd. of Zoning Appeals,* 15 F.3d 569, 572 (6th Cir.1994); *Univ. of Md. at Baltimore v. Peat Marwick Main & Co.,* 923 F.2d 265, 276 n. 16 (3d Cir.1991) (noting that where state forum will not review plaintiff's federal claims, there can be no parallel state court litigation).

Accordingly, we need not consider the factors which influence the analysis in the second part of the *Colorado River* abstention doctrine. Since the federal and state lawsuits are not parallel, we decline to abstain from the present case.

## IV.

### *Conclusion*

In accordance with the foregoing, we **DENY** Defendant Medical Institute's motion to dismiss or stay the federal proceed-

ing. This Opinion and Order disposes of *Docket Documents Nos. 21 and 40.*

**IT IS SO ORDERED.**